CHARRIE A. BACON *et al.*

*v.*

THE NATIONAL GERMAN-AMERICAN BANK of ST. PAUL.

*Opinion filed June 19, 1901.*

1. MORTGAGES—*an indebtedness to be secured is essential to the existence of a mortgage.* It is essential to the existence of a mortgage that there be some indebtedness to be secured thereby, or some obligation to pay money or perform some act or duty.

2. SAME—*what tends to show that deed was not intended as a mortgage.* Evidence that the grantee in a quit-claim deed refused to take a mortgage upon the property when approached upon the subject, tends to show that the quit-claim deed to him and his agreement to re-sell were not intended by him merely as a mortgage.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

The appellee, the National German-American Bank of St. Paul, Minnesota, claiming title in fee simple to a certain 96½ acre tract of land in Cook county, derived through *mesne* conveyances from the United States government, filed its bill, making the appellants, Charrie A. Bacon and others, parties thereto, to establish its title under the Burnt Records act. Appellants appeared and answered the petition, alleging that they are the equitable owners of the premises,—the appellants Charrie A. Bacon and Sarah L. Rogers as tenants in common of the east half thereof, and appellants Joseph K. Bacon and Charles P. Coleman as tenants in common of the west half thereof,—and claiming that the interest of the petitioner therein is that of mortgagee, only.

The relations of the various parties to the premises are as follows: In 1889 Frank K. Bacon purchased the property from William C. Goudy, executor of the estate of Lavinia C. Fuller, for $35,000, and gave a purchase money mortgage for $26,250 to said Goudy, covering the whole of the premises. In November, 1889, Charrie A.

Bacon and Sarah L. Rogers, appellants herein, by *mesne* conveyances had become the owners of the east half, and Joseph K. Bacon and Charles P. Coleman, appellants, had become the owners of the west half of the premises. In 1892 Joseph K. Bacon and Charles P. Coleman gave a mortgage to appellee on their west half of the land to secure their note of $20,000, this second mortgage being subject to the Goudy mortgage on the whole premises. In 1894 proceedings were commenced by the administrator *de bonis non* of the estate of Lavinia C. Fuller to foreclose the Goudy mortgage. Appellee, as holder of the second mortgage on a portion of the premises, was made a party to the foreclosure proceeding, and in 1895, after certain negotiations, conducted on the one hand by George V. Bacon in behalf of his wife, Charrie A. Bacon, and of Sarah L. Rogers, and on behalf of the bank by James W. Lusk, president thereof, Mr. Lusk, in his own name but as agent for appellee, purchased the Goudy mortgage for $25,000. Afterward, in November, 1895, pursuant to the negotiations with Mr. Lusk, appellants Charrie A. Bacon and Sarah L. Rogers conveyed all their interests in the land by quit-claim deeds to James W. Lusk. At that time and as part of that transaction Lusk executed and delivered to Charrie A. Bacon and Sarah L. Rogers an agreement, which provided that they might purchase from him the east half of the tract upon payment to him, on or before the time limited therein, one-half of all that it had cost him to obtain title to the whole tract,—which included one-half of the amount paid for the Goudy mortgage and one-half of the expense incurred in relation thereto,—and one-half of all money that might be paid out on account of the premises between the date of the contract and the date when appellants should exercise their option, together with ten per cent interest thereon. About eleven months later this agreement was canceled and a new one made, which contained the additional requirement that these appellants should pay to the ap-

pellee bank a note of $700 signed by George V. Bacon and Charrie A. Bacon. At about the same time of the delivery of the deeds by Charrie A. Bacon and Sarah L. Rogers, the appellants Joseph K. Bacon and Charles P. Coleman· also made and delivered quit-claim deeds of their west half of the land in controversy to Lusk. As part of that transaction Lusk surrendered their second mortgage note to them and canceled the indebtedness, and gave to them an option contract similar to the one given to the other two appellants, except that in case they elected to purchase they should pay $10,000 in addition to one-half of the amount it had cost the appellee to secure title to the premises, together with eight per cent interest thereon. After the purchase of the Goudy mortgage by Lusk the foreclosure proceedings were continued, and the premises were bought in by Lusk, for appellee, at the master's sale under the foreclosure decree, and the certificate of purchase was issued to him in January, 1896. The option contracts were from time to time extended, and finally expired July 1, 1899. Shortly before the time finally limited, the contracts were filed for record in Cook county. The defendants insisted by their answers that these contracts and said quit-claim deeds amounted to mortgages.

The cause was referred to the master. Evidence was heard by him upon the issues raised, and his conclusion that the deeds and option contracts did not constitute mortgages was reported to and confirmed by the circuit court, a decree being entered thereon in accordance with the prayer of the petition. From that decree appellants now prosecute this appeal, contending the quit-claim deeds to Lusk, though absolute in form, were intended to be mortgages, merely; that the deeds and contracts executed by Lusk to appellants were parts of one and the same transaction, and amount, in equity, to mortgages of the lands in controversy.

BROUGHAM & EDGERTON, for appellants.

HENRY A. GARDNER, and HENRY L. STERN, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

The only question presented by this appeal is, do the transactions referred to in the foregoing statement of the case amount only to mortgages, or were they conditional sales, subject to be defeated in case appellants should exercise the privilege of re-purchase granted by the option contracts?

The cause was heard by the master, and his conclusions of fact were in favor of the contention of the appellee, and the circuit court, after a hearing on exceptions to his report, approved those conclusions. We have carefully examined the record, and think the conclusions of the master and chancellor are correct and fully authorized by the weight of the evidence.

It appears from the testimony of George V. Bacon, husband of appellant Charrie A. Bacon, who acted for his wife and Sarah L. Rogers in the negotiations with Mr. Lusk looking to the taking up of the Goudy mortgage by the latter, that he (Bacon) asked that the bank take a mortgage on the east half of the land to secure the payment to it of one-half of the amount necessary to buy the first mortgage. This the bank declined to do, but insisted that quit-claim deeds be given. This would seem to clearly indicate, according to appellants' own evidence, that the bank did not intend the transaction should be considered as a mortgage, merely. Again, the bank, being the holder of a second mortgage on the west half of the property, might well desire to protect itself by buying in the first mortgage, but except for the purpose of protecting such second mortgage and curing any possible defect in the foreclosure of the first or Goudy mortgage there was no substantial reason why it should desire the quit-claim deeds. There were reasons, how-

ever, why the appellants should be willing to give the deeds and receive an option to re-purchase. At that time the Goudy mortgage was in process of foreclosure. In order to redeem from a foreclosure sale the owners of either half of the property would have to pay the full amount of the foreclosure decree, which amounted to about $32,000, whereas by giving the deeds and taking the options to re-purchase, the owners of either half would have to pay less than one-half of the amount necessary to redeem their half, and under the original contract obtained a longer time to re-purchase than the law would give them to redeem.

There is another aspect of the case which is conclusive against the contention of appellants. At the time of the giving of the quit-claim deeds, Charrie A. Bacon and Sarah L. Rogers were not indebted to appellee, nor did they become indebted to it, nor did they make any agreement to pay to it a single dollar. Appellee had no pecuniary claims whatever against either of them. Joseph K. Bacon and Charles P. Coleman were indebted to the bank in the sum of $20,000, but that indebtedness was canceled when the quit-claim deeds were given to Lusk by them, so that there was no indebtedness from either of them upon which to base a mortgage. It is well settled that it is essential to the creation and existence of a mortgage that there be some indebtedness to be secured thereby, or some obligation to pay money or perform some act or duty. When the debt is extinguished the mortgage becomes null and void. *Rue* v. *Dole*, 107 Ill. 275; *Burgett* v. *Osborne*, 172 id. 227.

We are clearly of the opinion that the court below committed no error in its decree in favor of appellee's contention, and it will accordingly be affirmed.

*Decree affirmed.*