## MASUTH *v.* STATE OF INDIANA

[No. 28,903.   Filed November 5, 1952.]

Richard W. Mehl of Mehl & Mehl, Goshen, for appellant.

J. Emmett McManamon, Attorney General, William T. McClain, John Ready O'Conner, Deputy Attorneys General, and Charles E. Hughes, Elkhart, for appellee.

GILKISON, J.—This is an appeal from a judgment rendered in the Elkhart Superior Court against appellant in a *coram nobis* action.

Her second amended petition alleges that she and one Marjason were indicted in that court on March 5, 1946, for murder in the first degree for the alleged poisoning of her husband, Leo Masuth, that she was arrested on

a warrant issued the same date and has been in jail or prison ever since. That on May 16, 1946 she entered a plea of guilty to the charge, and was thereupon sentenced to the Indiana Women's Prison for life where she has been incarcerated ever since.

That in fact Leo Masuth was not murdered but died from the administration by way of an intravenous injection of salrygan-theophylline which contains mercury, by a doctor in treatment, and which was the source of the mercury found in decedent's body. That these facts were unknown to her until after her plea, and the judgment and incarceration thereon.

To prove these facts she attached the affidavit of Dr. Goodrum who gave the injection, as "Exhibit A". To further prove that the mercury, so administered caused the death she attached the affidavit of decedent's family physician, Dr. Hull, as "Exhibit B". To prove that she did not know of these facts at the time of her plea and that she could not have discovered them by the exercise of due diligence, she attached her own affidavit as "Exhibit C".

The petition was put at issue by an answer admitting that petitioner was indicted, entered her plea of guilty, was sentenced to prison for life, where she has ever since been incarcerated; and denying the remaining averments.

The record indicates that the law firm of Procter and Procter had something to do in the matter of representing appellant when she was first arrested, but upon her arraignment on March 8, 1945, she was without an attorney and the court appointed Mr. Eichelberg "the attorney for the indigent" to represent her. On March 29, 1946, she entered a plea of not guilty. On May 13, 1946, by the pauper attorney, she asked to withdraw her plea of not guilty to enter a plea of guilty to second

degree murder but stated she was not guilty. The court then refused to allow the withdrawal of the plea of not guilty, or to accept the plea of guilty. On May 16, 1946, at the request of the pauper attorney, additional record was made and some evidence was heard and her plea of guilty was accepted. A record was made at the time of all the proceedings in the matter of the plea, the change of plea and its acceptance by the court. This record was all offered in evidence as "Plaintiff's Exhibit 3", an objection to which was sustained.

Appellant assigns eleven alleged errors. No. 2 is that it was error to refuse to admit into evidence petitioner's Exhibit 3.

Exhibit 3 is quite lengthy. It includes the proceedings in the matter of the arraignment and plea—on May 13 and 16, 1946. Among other things, her attorney, Eichelberg stated: That he had brought Rose Masuth into court at the request of Mr. Bontrager, the prosecuting attorney, who stated he "had conferred" with her either "Saturday or yesterday", and she desired to change her plea to guilty of second degree murder. But he said he had talked to her and that was her desire, but she said that she was not guilty of the crime. He then called in the prosecutor and repeated the questions to her, and got the same statement. The prosecutor then questioned her and got the same statement. He then asked that the judge question her. The judge then advised and admonished her and told her he could not understand her attitude, that there was no such thing as wanting to plead guilty and then say you are not guilty, closing his talk with the question: "Do you understand all that?" To which the defendant answered: "I think I do." The judge then argued with her, thus: "Then why do you want to plead guilty, when you are not guilty? You say you are not guilty. Why

do you want to enter a plea of guilty, and have imposed upon you a life sentence?" To which defendant answered: "I don't know for sure." The prosecutor then said he had talked with her a few minutes yesterday, and after he left the room "the sheriff advised me she said she was guilty, and wanted to plead guilty." Her attorney, Eichelberg, said I would like to ask her two questions. "Was it your desire to enter a plea of guilty to second degree murder this morning?" to which defendant said "Yes". Then her attorney said: "And you are guilty of murder in the second degree" to which defendant said "Yes". Then Mr. Robert E. Procter said: "Does your Honor want to hear me? I am an officer of the Court, and my name has been connected with this, and I went over and interviewed her over a month ago, and advised her to stand trial, and gave my reasons for it. This woman is suffering from syphilis, which I think is affecting her brain, and I don't think she knows what she is doing. I think it should go before a jury. She should be defended. That is my attitude. I don't think it is safe for the Court to take a plea."

The judge then admonished her at length and refused to accept her plea.

Three days later Mr. Eichelberg appeared in court with the defendant and told the court she wished to change her plea from not guilty to guilty of murder in the second degree, and stated: "I wish the court would take some evidence in this matter, in order to complete the record."

The prosecutor then proceeded to question one William F. Roth, a captain of the Elkhart police, who attempted to identify a supposed confession made by the defendant marked as state's "Exhibit A". He then identified another confession supposedly made by her,

marked state's "Exhibit B". He then identified another supposed confession made by defendant marked state's "Exhibit C". These exhibits were put in evidence not only without objection from petitioner's attorney but by his request. Petitioner's attorney cross-examined this witness by asking four questions all designed to strengthen the legality of the supposed confessions. The prosecutor also put in the evidence taken at the coroner's inquest. This evidence was all given by police officers and the sheriff. The sheriff identified state's "Exhibit E" which was a statement prepared by defendant's attorney, and he and the sheriff took it to defendant's cell in the jail, asked her to read it and sign it, and said they would have witnesses there to sign it. This exhibit was read to the judge. It was another supposed confession in which, among other things, she said she was instructing her attorney, Frank C. Eichelberg to enter a plea of murder in the second degree for her, and that she would save him harmless "from any action or causes of action that I may have or acquire by reason of the fact he enters a plea of guilty for me."

Mr. Eichelberg, defendant's attorney, then put in evidence his voluntary statement. Among other things he said he had contacted Dr. Hull by telephone and in a conversation Dr. Hull told him he thought Rose Masuth was of sound mind; that she was not insane; that she could understand "questions that might be put to her in the simplest of language." He further said he knew Dr. Hull or his nurse visited Mrs. Masuth at the jail frequently to treat her for syphilis.

The court then accepted her plea of guilty to second degree murder; saying among other things, that from the facts presented including the several confessions by her, "there is no question about your guilt, either

of first or second degree murder." The reason for the state's objection to the introduction into evidence of petitioner's "Exhibit 3" was that no constitutional question regarding the arraignment is raised by the *coram nobis* petition.

The court sustained the objection on the ground that the petition raised no question concerning the denial of constitutional rights at the arraignment of the defendant. The court, among other things, said: "I know all about that. The law says the court should take into consideration all the evidence had before him prior to the time of the hearing when the original case was tried etc. I have a right to take into consideration the preliminaries if I want to in deciding this particular case, if there is anything important."

A petition for a writ of error *coram nobis* is in itself a civil action. On appeal this court can consider only the evidence heard by the trial court. For that reason it is imperative that all the material evidence offered by either side should be admitted. We think appellant's "Exhibit 3", with its exhibits contained only material evidence, and it should have been admitted in evidence. Sustaining an objection to its admission, is reversible error.

The petition is unartfully drawn, but it is essentially a petition to vacate the judgment, to be permitted to withdraw the plea of guilty, to enter a plea of not guilty, and to have a trial, upon the indictment. The state, having put the second amended petition at issue by answer, and the court having tried the same, it retained and had jurisdiction of the cause to receive and act upon the application, to set aside the judgment, permit the withdrawal of the plea of guilty and enter a plea of not guilty, which is a recognized procedure in this state. *Nahas* v. *State* (1927), 199 Ind.

117, 120, 155 N. E. 259. After trial, this court will presume the amendment of the complaint or petition to conform to the facts proved, where the amendment will not deprive a party of any substantial right. Section 2-1068 Burns' 1946 Replacement. Rhetorical paragraph three of the petition avers "that Leo Masuth was not murdered but died from the administration of a drug called salrygan-theophylline which contains mercury, which caused his death, and, which was responsible for the mercury found in his body, which facts were not discovered until after petitioner's plea of guilty and incarceration."

This is an essential averment of appellant's petition, and her "Exhibit 3" is competent and potent evidence on that averment.

On appeal this court has no way of knowing what the trial court knows about the arraignment, other than that which is put in evidence and therefore is contained in the bill of exceptions. *Farnsley* v. *State* (1925), 196 Ind. 722, 728, 149 N. E. 436. *Nahas* v. *State,* supra, p. 117, 120. *Campbell* v. *State* (1951), 229 Ind. 198, 205, 96 N. E. 2d 876. *Kuhn* v. *State* (1944), 222 Ind. 179, 187, 197 to 202, 52 N. E. 2d 491.

"... If the facts are disputed, the evidence, including the testimony of the judge as to facts within his personal knowledge, should be taken and recorded as a basis for subsequent review if the final ruling of the trial judge be adverse to appellant." *Kuhn* v. *State,* supra, p. 187. *Campbell* v. *State* (1951), supra, p. 205.

The existence of petitioner's "Exhibit 3" indicates that the trial court exercised commendable judicial care at the arraignment of appellant, and had a record made at the time, of the various questions and answers made,

including the remarks of the judge and the attorneys. This record was offered in evidence, and it was error to sustain the state's objection to its introduction.

Other alleged errors are discussed in appellant's briefs. The judgment must be reversed because of the error in sustaining the objection to the admission of competent and essential evidence as indicated. When and if this evidence is in the record, the court may be better prepared to determine any additional questions.

The judgment is reversed with instructions to retry the cause and to admit petitioner's "Exhibit 3" into evidence, and for such further proceedings as are consisent with this opinion.

NOTE.—Reported in 108 N. E. 2d 313.