GENERAL OUTDOOR ADVERTISING CO., INC.,
*v.* LASALLE REALTY CORP.

[No. 20,402. Filed June 30, 1966. Rehearing denied December 23, 1966. Transfer denied June 21, 1967.]

250

5

10

*Norman R. Newman,* of Indianapolis, and *Dann, Backer & Pecar,* of Indianapolis, and *Edward B. Smith,* of South Bend, both of counsel, all for appellant.

*Isadore D. Rosenfeld, Voor, Jackson, McMichael & Rodibaugh,* and *William E. Voor, Jr.,* all of South Bend, all for appellee.

HUNTER, J.—The appellee brought this action in the lower court to recover damages for injuries to its building alleged to have been caused by the appellant's sign. The appellant had leased the roof of said building on which it erected a large advertising sign. The court tried the case without the intervention of a jury, awarding the appellee an Eight Thousand Five Hundred ($8,500) Dollar judgment. The appellant assigns as error the lower court's overruling its motion for new trial. Two errors were specifically argued in the briefs.

The appellant first contends that the decision of the lower court is contrary to law and not supported by sufficient evidence. To support these conclusions, the appellant contends that the theory of the complaint was in contract, that the contract was never introduced into evidence, and that the only evidence was in negligence. Consequently, there was not merely a variation between the *allegata et probata* but a total failure of proof, i. e., one cannot plead a contract and prove tort.

However, the appellee contends that its complaint stated an action *ex delicto* not *ex contractu*. There can be no doubt that all the evidence was in negligence which demonstrated that the appellants were negligent in the construction and maintenance of the sign. The contract (lease) with the hold harmless clause was never introduced into evidence. The appellant made a motion for a judgment at the close of the appellee's evidence stating that all the evidence was in negligence and that the complaint (contract action) was totally unsupported by evidence. The court overruled the motion. In reviewing the record, we found no pertinent objections to the introduction of any of the appellee's evidence. In addition, all the evidence submitted by the appellant, after the denial of its motion, can only be construed as bearing on the issue of negligence. Also, the appellant does not contend that there is insufficient evidence to sustain the court's decision in negligence.

In reading the complaint, we find that in order to construe the complaint as stating an action *ex delicto* we would have to interpret the complaint with extreme liberality, so much so that we would probably end with a result which was obviously at variance with that intended by the pleader. We have the authority to do so, especially in the absence of a demurrer and a motion to make more specific. However, to entertain such reasoning is to ignore the real issue. We choose to attack the issue directly: that is, can a party plead an action *ex contractu* but succeed in proving an action *ex delicto?* In so doing, we do not find it necessary to decide whether the

complaint was in contract or tort, for any difference will have no bearing in view of the decision we are reaching.

The issue present requires that we review the case law and our civil code in the area of pleadings. In attempting to discern some meaning from these areas, we have found much confusion. Inherent within our decision is the question of the purpose of pleadings. However, for the sake of brevity, we shall attempt to confine our discussion to that issue directly before us.

As authority for its contentions, the appellant cites § 2-1065, Burns' 1946 Replacement and *Heck et al.* v. *Selig* (1963), 134 Ind. App. 336, 188 N. E. 2d 118 which the appellant contends support the "well established principle" that a plaintiff's proof must sustain the theory of his complaint. After further development, we shall distinguish this principle from that inherent in this opinion.

It is the opinion of this court that § 2-3231, Burns' 1946 Replacement provides the answer to this issue. The statute provides:

> "No judgment shall be stayed or reversed, in whole or in part, by the Supreme Court, for any defect in form, variance or imperfection contained in the record, pleadings, process, entries, returns, or other proceedings therein, which, by law, might be amended by the court below, but such defects *shall be deemed* to be *amended* in the Supreme Court;" (Acts 1881 (Spec. Sess.), ch. 38, § 659, p. 240.) (our emphasis)

Consequently, this court on appeal cannot reverse for any "defect" in "form" or "variance" that could have been amended by the lower court. Therefore, the issue becomes whether or not the lower court might have amended the complaint to conform to the evidence.

It is firmly established that a lower court can amend the pleadings before or during the trial regardless of the factor

that a change in the cause of action might result. In ■ *Burr* v. *Mendenhall* (1875), 49 Ind. 496, 498-499, our Supreme Court spoke of the "irreconcilable" conflict in the decisions at that time as to whether a party could change his cause of action by an amendment of the pleadings after the issues were closed and during the trial.

The court finally concluded:

> "It will be observed, that the earlier and later decisions of this court, computing time with reference to the adoption of the code, accord with what was the manifest intention of the framers of the code, and that was to secure a speedy trial of causes upon their merits, *disregarding all mere formal and technical objections*. This intention is manifested in sections 97, 98, and 99 of the code, which prescribe what amendments may be made, and how a party may be relieved against a judgment taken against him by his mistake, inadvertence, or excusable neglect.
>
> The granting of leave to amend the pleadings *after the issues are closed,* and *before the commencement of the trial,* and *on the trial,* is very much within the sound legal discretion of the lower courts, and should only be granted in a proper case and upon good cause shown by affidavit, where the amendment makes a new issue or adds a new cause of action or ground of defense." (our emphasis)

See also *Levy et al.* v. *Chittenden et al.* (1889), 120 Ind. 37, 22 N. E. 92. From these cases, it appears that the state of the law is that a party may amend his pleadings before or ■ during the trial even though the cause of action is changed subject to the discretion of the court. However, there is no absolute limitation on the court's discretion in permitting amendments merely because the cause of action or theory of the complaint is changed. The decision to grant or deny an amendment is to be left entirely to the discretion of the lower court. Barring a clear abuse of the lower court's exercise of such discretion, there will be no reversal on appeal for either a denial or granting of the requested amendment. Perhaps it is pertinent to comment that in the early cases decided after the new civil code had been adopted when the

majority of the judges had been trained under the principles of common law pleading, many amendments were refused because the theory of the case or cause of action would have been changed and such was assumed to be prejudicial. See *Lewark* v. *Carter et al.* (1888), 117 Ind. 206, 20 N. E. 119.

In addition, it is clear that the civil code did not then, nor does it now, provide that a party during the trial should not be allowed to amend merely because there resulted a change in the cause of action. § 2-1603 Burns' 1946 Replacement provides:

> "No variance between the allegations in a pleading and the proof is to be deemed material, unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must be shown in what respect he has been misled; and, thereupon, the court may order the pleading to be amended on such terms as may be just." (Acts 1881 (Spec. Sess.), ch. 38, § 130, p. 240.)

§ 2-1604, Burns' 1946 Replacement provides:

> "Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs." (Acts 1881 (Spec. Sess.), ch. 38, § 131, p. 240.)

§ 2-1066, Burns' 1946 Replacement provides:

> "Any pleading may be amended by either party, of course, at any time before the pleading is answered. All other amendments shall be by leave of the court. The party amending shall pay the costs of the leave to amend . . . No cause shall be delayed by reason of an amendment, excepting only the time to make up issues, but upon good cause shown by affidavit of the party or his agent asking such delay." (Acts 1881 (Spec. Sess.), ch. 38, § 133, p. 240.)

These statutes are substantially the same as when adopted in the revision of the civil code in 1852 and re-enacted in 1881. There can be found no mention of "cause of action" or "theory

of the complaint" in any of such statutes. The only limitation is that found in § 2-1063, *supra,* applicable to where such an amendment is prejudicial to another party. These statutes are contrary to the tenets of "theory pleading" as adhered to in the "common law." *Levy, supra; Burr, supra.*

However, much of the confusion that exists is due to § 2-1065, *supra,* which provides:

> "When, however, the allegation of the claim or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections, but a failure of proof." (Acts 1881 (Spec. Sess.), ch. 38, § 132, p. 240.)

This provision is the same as when adopted in 1852 and re-enacted in 1881. Many courts have, *when not dealing with amendment situations,* cited this provision in support of the proposition that any variance of allegations and proof up to a variance resulting in a change of the cause of action, is not a failure of proof while a variance resulting in a change of the cause of action is failure of proof. It should be noted that we have failed to find any court which has interpreted § 2-1065, *supra,* as a restriction on the amendment statutes referred to above. In *Chicago, etc., R. Co.* v. *Collins* (1924), 82 Ind. App. 41, 142 N. E. 634, 143 N. E. 712, the court in its original opinion spoke of a variance which will result in a failure of proof. As will be shown subsequently, this type of reasoning overlooks the internal consistency of §§ 2-1063, 2-1064, 2-1066, *supra,* and the 1921 amendment to § 2-1068, Burns' 1946 Replacement, all of which finally become extended in § 2-3231 when an appeal arises. In the petition to re-hear, the court reconsidered using the approach of § 2-1068 as amended in 1921. In light of the *Levy* and *Burr* cases, *supra,* we do not deem it necessary to consider § 2-1065, *supra,* for it has no relevance to the facts at bar.

From the above we see that our civil code does not hold a party to the theory of his pleading before or during the trial

as such party may be allowed to amend his pleading even if the cause of action is changed.

However, *Levy, supra,* pp. 40-41 stated:

"But this court has aways held that it is error to allow an amendment to the pleadings, which changes the nature of the cause of action or defence, after the trial has been concluded before the court or jury trying the same."

See also *Thrall* v. *Gosnell* (1902), 28 Ind. App. 174, 62 N. E. 462. In 1889, this was substantially correct for at that time the statute § 396, Horner's Annotated Statutes, 1901, provided:

"The Court may, at any time, in its discretion, and upon such terms as may be deemed proper for the furtherance of justice, direct the name of any party to be added or struck out; a mistake in name, description, or legal effect, or in any other respect, to be corrected; any material allegation to be inserted, struck out, or modified, —to *conform the pleadings to the facts proved, when the amendment does not substantially change the claim or defense . . .*" (our emphasis)

For an application of § 396, *supra,* see *Lister* v. *McNeal* (1859), 12 Ind. 302. However, this statute which is not § 2-1068 *supra,* was amended to state:

"After trial and before final judgment, the court may, in its discretion and upon such terms as may be deemed proper for the furtherance of justice, order that any pleading be amended by correcting any mistake in name, description, legal effect, or in any other respect; or by inserting, striking out, or modifying any material allegation, in order that the pleadings may conform to the facts proved, *where the amendment will not deprive a party of any substantial right.*" (Acts 1881 (Spec. Sess.), ch. 38, § 135, p. 240; 1921, ch. 115, § 1, p. 277; 1941, ch. 72, § 1, p. 185.) (our emphasis)

Consequently, after a trial where there was a request for an amendment to the pleadings, before the 1921 amendment to § 2-1068, *supra,* a court could amend the pleading to conform to the evidence "when the amendment does not substantially change the claim or defense." This

language could have been properly interpreted as not allowing amendments which resulted in a change in the cause of action or theory of the complaint. However, since 1921, after the trial, a court may properly amend the pleadings to conform to the evidence "where the amendment will not deprive a party of any substantial right." Any language which made a change in the cause of action as proper criteria for allowing or denying an amendement was stricken from the statute.

The statute, since its amendment, has been frequently applied in cases not involving a change in the theory or cause of action. See *Masuth* v. *State* (1952), 231 Ind. 265, 108 N. E. 2d 313; *Oppenheimer et al.* v. *Craft* (1961), 132 Ind. App. 452, 175 N. E. 2d 715; *Cauldwell, Inc., et al.* v. *Patterson* (1961), 133 Ind. App. 138, 177 N. E. 2d 490; *Wolf Produce and Transp. Co.* v. *Lang Trucking, Inc.* (1965), 136 Ind. App. 571, 203 N. E. 2d 308.

In some of these cases the problems involved situations where amendments would result in a change of the cause of action or theory of the complaint are alluded to but only by way of dictum. In *Wolf, supra*, at p. 310, the court stated: "Amending the complaint after trial may be harmful in certain cases where the theory of the complaint is changed . . ." citing *McCool* v. *Old Natl. Bank in Evansville, Admr.* (1938), 214 Ind. 679, 17 N. E. 2d 820. The latter case involved a petition to remove an administrator. The administrator answered and at the trial, after the close of the petitioner's evidence, the administrator moved for a judgment. The court granted the motion. While the court was developing its special findings, the administrator filed a cross-complaint seeking a personal judgment against the petitioner in favor of the estate. This was allowed over the petitioner's objections. On appeal our Supreme Court held the allowance of this cross-complaint was error, stating at p. 684:

"Section 2-1068 Burns' Ann. St. 1933, section 173 Baldwin's Ind. St. 1934, provides that after trial, and before final

judgment, the court may permit the amendment of pleadings. An amendment and addition to the pleading, which brings in a new and different cause of action by cross-complaint, *involving matters not within the scope of the issues as formed and tried,* cannot be made after the case is decided, and in this case there is a misjoinder of parties involved." (our emphasis)

However, we do not interpret this case as unequivocally stating that a pleading may not be amended under § 2-1068, *supra,* to state a new cause of action. The court stated that the cause of action in the cross-complaint was not within the *issues formed and tried.* Therefore, reasoned the court, such additional pleadings should not have been allowed. It should be noted that this case is not an instance where the lower court allowed an amendment of the pleadings to conform to the evidence, for there was no evidence in the original trial on the issues presented by the cross-complaint. Therefore, this case would not hold contrary to our interpretation of § 2-1068, *supra.*

We have found no cases which go any further than *McCool, supra.* Consequently, we conclude that the determining factor to be considered by the court in allowing or denying an amendment after the trial to correct a variance is whether or not a party to the action would be deprived of any substantial right. *A change in the cause of action or theory of the complaint is relevant only to the extent that it might deprive a party of a substantial right.* See also *Freas* v. *Custer* (1929), 201 Ind. 159, 166 N. E. 434. In our opinion § 2-1068, *supra,* supersedes *Levy, supra,* in respect to the court's reference to amendments allowed after the trial.

The appellant cites the case of *The Jeffersonville, etc., R.R. Co.* v. *Worland, Ex'r.* (1850), 50 Ind. 339 and others in support of the theory that a party may not plead contract and prove tort. However, we note that those cases cited were prior to the 1921 amendment to § 2-1068, *supra.* Conse-

quently, at the time of the decisions cited this court or the Supreme Court could not have properly considered such defects to be amended on appeals under § 3231, *supra,* where the cause of action would have been changed. However, since the 1921 amendment, we cannot reverse due to such defects in variance unless by curing such defects a party might be deprived of any substantial right. A change in the cause of action as previously stated is not the proper criteria for the propriety of such amendments. In the facts at bar, it is uncontested that the appellee submitted all the evidence on the question of negligence, although the pleadings may have been in contract. The appellant met the issue by submitting evidence on the question of negligence. However, no action was taken to amend the pleadings to conform to the evidence during or after the trial. As previously noted, § 2-3231, *supra,* allows this court to consider those defects which might have been amended by the lower court, to be amended on appeal. Also, the amendment which the lower court might have made after the trial and before final judgment must be determined under § 2-1068, *supra.*

As previously discussed we have found nothing to inhibit a lower court from allowing an amendment to change the pleadings to conform to the evidence as long as a party is not deprived of any substantial rights. In the facts at bar the evidence on negligence was introduced without pertinent objections by the appellant. Although the appellant in its motion for a judgment raised the issue of variance, the court could have allowed an amendment at that time. *Levy, supra; Burr, supra.* The appellant did not claim surprise or any lack of ability to meet the issue, or request a continuance. In fact the appellant continued and submitted its own evidence on the question of negligence. At the very least, the issue of negligence was tried with the appellant's implied consent. Consequently, we hold that the lower court might properly have allowed an amendment after the trial to conform the pleadings to the evidence, re-

gardless of the fact that a change in the theory of the complaint might have resulted. Such an amendment would not have deprived the appellant of any substantial rights. § 2-1068, *supra*. Furthermore, applying the language of *McCool, supra,* this amendment would arise out of "the issues formed and tried."

Therefore, by the authority of § 2-3231, *supra,* since the lower court might have properly amended the pleadings *after* the trial, we shall consider the pleadings as amended to conform to the evidence.

We do not have the problem referred to in *Underwood* v. *Ferguson* (1956), 126 Ind. App. 643, 133 N.E. 2d 573, where this court stated that an amendment may not properly be given where the cause of action would be changed and the statute of limitations interposes. In the facts at bar the issue of negligence was tried with the implied consent of the appellant. Consequently, any defense not raised by the appellant at the trial is waived.

There is a line of authority that reaches the same result as expressed in this opinion, in that a party is not necessarily bound to the theory expressed in the pleadings. See *Morgan* v. *Sparling* (1953), 124 Ind. App. 310, 115 N.E. 2d 514; *Swisher et al.* v. *Keeler et al.* (1953), 124 Ind. App. 352, 115 N. E. 2d 217; *Smith* v. *Thomas et al.* (1955), 126 Ind. App. 59, 130 N.E. 2d 85 (note the dissent) ; *Lepsch* v. *Marlowe* (1963), 135 Ind. App. 35, 189 N. E. 2d 116. However, the reasoning used in these cases differs in that the courts stated that when the parties have adopted a theory which differs from that in the pleadings, they shall be bound to such theory on appeal. Our reasoning differs only to the extent that we have reconciled the case law to our civil code. In this manner we reject the appellant's contention that the appellee could not plead a contract and prove a tort.

The remaining specification of error in the appellant's motion for new trial and argued in its brief on appeal is that

the decision of the lower court is contrary to law and not sustained by sufficient evidence as the appellant failed to properly prove damages. The appellee in the lower court submitted the following evidence on damages caused by the appellant's negligence:

(1) That it would cost approximately $20,000 to $25,000 to restore the building; and
(2) that the original cost of the building was $65,000 to Michiana Reality Corp. who sold the building in 1952 to LaSalle Reality Corp.

The appellant contends that under the issues formed there is insufficient evidence to sustain the judgment of the trial court in the amount of damages awarded. In support of this contention, the appellant urges that the measure of damages must be the market value of the real property before the damage complained of less the market value after said damage. The appellant further states that Indiana has no relevant cases in point where there is a value of a building separate from the real estate. The appellant contends that in the absence of controlling authority in Indiana, we should follow those jurisdictions which state that where there is damage to a building which has a value separate from the real estate, the measure of damages should be the cost of restoration (i. e., repair cost) or the market value of the building prior to the injury less the market value of the building after the injury, whichever is less. In accord with this logic, the appellant urges that since the appellee submitted no evidence on the "before and after" value, the lower court's judgment must fail as not being supported by sufficient evidence and contrary to law under either the Indiana authority on real estate damage or under the theory of damages as stated above relating to damage to a building with a value separate and apart from the real estate.

In addition, the appellant contends that unless the building is actually repaired, the estimates of repair costs are not

admissable; against without authority in Indiana but upon the basis of the law in other jurisdictions. Thus, the appellant advances the theory that there remains only the "before and after" test of damages. For this additional reason, it is the position of the appellant that the court's judgment is not supported by sufficient evidence and is contrary to law.

It should be noted that this case involves no problems such as loss or use or loss of profits. The judgment was based solely on evidence pertinent to the physical damage to the building.

We are concerned with rules of law which will control the measure of damages to be awarded to the appellee caused by the actionable wrong of the appellant, i. e., an amount necessary to compensate him for the damage sustained. In reviewing the Indiana authorities, we do not agree with the appellant's contention that the general rule for measuring damage to real estate is the market value of the property before the injury less the market value of the property after the injury. The appellant cites *Chicago, etc., R. Co.* v. *Brown* (1901), 157 Ind. 544, 548, 60 N. E. 346. However, this case is rather misleading. Said case involved permanent damage to real estate and did not differentiate between permanent and non-permanent injury. In discussing this rule of law, our Supreme Court cited *The Louisville, New Albany and Chicago Railway Co.* v. *Sparks et al.* (1894), 12 Ind. App. 410, 411, 412, 40 N. E. 546, where this court stated:

> "Injuries of the character here sued for are somewhat analogous to those involved in actions for damages for the wrongful appropriation of land by municipal corporations or railroad companies. In all such cases *where the injury is a permanent one,* the measure of damages to the land is the diminished market value of the same by reason of the injury, which is ascertained by proof of the market value before the injury and the market value after the injury, leaving it to the jury or court trying the cause to calculate the difference. *If, however, the injury is not a permanent one, . . .*" (our emphasis)

Here again the court was concerned with permanent damage to real estate. However by dictum the court indicated that if the injury was not permanent, then a different basis of calculating damages should be applied citing *The City of Fort Wayne* v. *Hamilton et al.* (1892), 132 Ind. 487, 493, 32 N. E. 324, where the court stated:

> "The injury complained of in this case was permanent and destructive. The shrubs, shade trees and soil were removed therefrom and a street and sidewalk constructed, so that it was practically impossible to restore the property to its former condition. In addition to this, the rights of the public demanded its continuance as a public thoroughfare. This brings the case within the rule laid down in *Jones* v. *Gooday*, 8 M. & W. 146, * cited in *Anderson, etc., R. R. Co.* v. *Kernodle*, 54 Ind. 314, fixing the measure of damages at the value of the land, rather than the amount which would be required to restore it to its original condition."

The *Anderson* case, *supra,* relied on by the court in the *Fort Wayne* case, *supra,* does not involve damages caused by the negligence of another; rather it involves a non-permanent injury to real estate in a trespass case. However, as shown in the *Louisville Railway* case, *supra,* the measure of damages for a negligent injury evolved from the measure of damages used in trespass actions. We perceive no logical reason why there should be any difference in the measure of damages for the two types of injuries, particularly since both are injuries sustained as a result of tortious conduct. This of course, is qualified by the choice of remedies which might exist in a trespass action. See *Hire* v. *Pinkerton* (1955), 126 Ind. App. 23, 127 N. E. 2d 244.

In *Anderson, supra,* the court was concerned with an instruction which stated that the measure of damages to the real estate was the market value of the land before the injury less the market value of the land after the injury. The court in

---

* For 8 M. & W. 146, see 53 Revised Reports 649 which is a consolidated reporter for the early English cases.

considering the propriety of this instruction stated at pp. 316-317:

> "Where acts, committed in a trespass upon real estate, destroy or render it permanently valueless, the damage is the value destroyed, which, in such case, may be the value of the property. (citing) Field on Damages, 598-599. *Jones* v. *Gooday*, 8 M. & W. 146, * was such a case. We give the material points of it: . . .
>
> Alderson, B., said, 'I am of the same opinion. The plaintiff is entitled, by way of compensation, to what the land was worth to him. If the principle for which Mr. Kelly contends were to be adopted, it would follow that a party who has let the sea in upon the land of another, the land itself being worth only twenty pounds, would have to pay, by way of damages, the expenses of excluding it again by extensive engineering operations.' "

The court concluded that since the injury to the land was not permanent, the measure of damages should not include the market value of the property, holding the instruction to be erroneous. The court stated the proper measure of damages was "compensation for such damages . . . as the railroad perpetrated . . ."

What the courts have been stating is that if the injury to real estate is permanent, then the proper measure of damages is the market value before the injury less the market value after the injury. The cases have not interpreted the meaning of "permanent." However, on the authority of *Anderson, supra,* if the injury is not permanent, we know that the "before and after" test is improper. See also *Indiana Pipe Line Co.* v. *Christensen* (1919), 188 Ind. 400, 123 N. E. 789. The *Anderson* case, *supra,* does not speak with much clarity on the exact measure to be used in the case of a non-permanent injury. But by way of dictum in *Fort Wayne, supra,* p. 493, the court speaks of the rule laid down in *Jones* v. *Gooday, supra,* cited by *Anderson, supra,* and interprets it as "the amount which would be required to restore it to its original condition."

From this analysis, we must conclude that in cases of injury to real estate or to that which has no value separate and apart from the real estate, the proper measure of damages is as follows: (1) if the injury is permanent, the measure of damages is the market value of the real estate before the injury, less the market value after the injury; (2) if the injury to real estate is not permanent, then the measure of damages is the cost of restoration. However, in our Indiana case law we do not have a clear delineation between permanent and non-permanent damage.

We agree with the appellant that Indiana does not have any authority which directly bears on the measure of damages for non-permanent injury to property attached to realty but with a value separate from the realty such as a building. For cases which involve permanent injury, See *Pittsburgh, etc., R. Co.* v. *Indiana Horseshoe Co.* (1900), 154 Ind. 322, 56 N. E. 766; *Hedge* v. *Newsom* (1930), 97 Ind. App. 465, 170 N. E. 336. In the latter two cases the buildings were completely destroyed by fire. However, in the absence of such authority appellant contends that we should apply the rule of damages which states the measure of damages to be the market value before the injury less the market value after the injury or the repair costs, whichever is less. See 25 C. J. S., *Damages,* § 85(a), pp. 931-932; 22 Am. Jur. 2d, *Damages,* §§ 138, 139, 140, p. 201 *et seq.; Ferreri* v. *Dworman Associates, Inc.* (1962), 231 N. Y. S. 2d 399; *Zaras* v. *City of Findlay* (1960), 122 Ohio App. 367, 176 N. E. 2d 451; *Engel* v. *Dunn County* (1956), 273 Wis. 218, 77 N. W. 2d 408; *Dalton* v. *Demos Brothers General Contractors* (1956), 334 Mass. 377, 135 N. E. 2d 646.

In advocating the use of this rule of damages, the appellant states that if a plaintiff is allowed repair costs without the limitation of the "before and after" test, then he might be placed in a better positon than he was before the damage. If a plaintiff is to be allowed repair costs when they exceed the market value of the building before the injury less the market

value after the injury, plaintiff could choose not to repair the building and sell it, profiting to the extent of such excess of repair costs.

Although this view seems equitable from a defendant's position, it is rather discriminate against a plaintiff. What if a plaintiff does not desire to sell his property? In this posture the effect of the rule would be that where the restoration costs exceed the "before and after" measure, a plaintiff would receive the latter. Consequently, if he did not desire to sell the building, he would not receive damages sufficient to restore the building to its original condition. The "before and after" test, if used in cases of non-permanent injury, is in reality forcing the plaintiff to sell the building in order to restore himself to the same position enjoyed before the injury. Certainly such a measure of damages partially compensates a plaintiff for injury done to his building and affords some protection to a part of his property rights. However, it would seem more proper to place the plaintiff in a position where he could be unrestricted in the exercise of his property rights of continued ownership or alienation. When these considerations are weighed against the possible "windfall" that might be given to a plaintiff, the former seems to take precedence over the latter. It is the defendant who places a plaintiff in such a position. Consequently, this court is of the opinion that under the above stated issues, the rights and equities of a plaintiff should be determinative, within defined legal limits.

Unquestionably these differences might be more academic than real, for instance where the cost of restoration would be evidence of the market value after the injury. We express no opinion as to the admissability of such evidence on the question of the market value of a building after the injury, for said question is not before this court. Notwithstanding these considerations, if such evidence were admissable, there might be instances where the decrease in market value would differ from the cost of restoration.

Therefore, we reject the appellant's theory of damages. By merely extrapolating the Indiana measure of damages for injury to real estate and applying it to injury to property attached to real estate having a value separate from the real estate, we believe a more legally consistent and equitable theory of damages will result. This means that where such property is permanently damaged, the proper measure of damages would be the market value before the injury: whereas if the damage is non-permanent, the proper measure would be the cost of restoration. *Anderson, etc., R. R. Co.* v. *Kernodle, supra.*

As noted above, the cases analyzed in instances of damage to real estate have not propounded a clear definition of permanent or non-permanent damage. However, we realize that the difficulties in defining permanent injury in instances of damage to realty are largely due to the fact that realty can never be completely destroyed. In cases of injury to buildings which have a value separate from the land, the same questions do not exist. In the facts at bar, it would seem reasonable to define permanent injury as being one wherein the cost of restoration exceeds the market value of the building prior to the injury. By adhering to such a definition, we as a matter of law, raise a safeguard against a windfall while additionally protecting the property rights involved. Such a rule is protective of the interests of both parties in their proper perspectives.

It should be noted that this court is not of the opinion that the measure of damages which we are following in this case will be equally applicable in all possible fact situations: for example, here we do not have a problem of a permanent damage which might involve salvage proceeds or demolition costs. Any measure of damages must be flexible enough to vary with the necessities of the situation.

Although we have rejected the appellant's proposed theory of damages, one point which is made under its proposed theory

is equally applicable to that adopted by this court. The appellant contends that if it is shown that the buliding was not repaired or is not to be repaired, then restoration costs are not admissable and the only measure of damages is the "before and after" test. The appellee in the facts at bar chose to demolish the building rather than repair it. The appellant presents no Indiana authority on this proposition, however it cites *Maryland Casualty Company* v. *Rittiner* (1961, La. App.), 133 So. 2d 172 and *Lucas* v. *Bowman Dairy Company* (1964), 50 Ill. App. 2d 413, 200 N. E. 2d 374. We are of the opinion that these authorities are not in point. The Louisiana case involved an insurance disagreement. The Illinois case law dealt with damage to personalty and the Illinois case law does not apply the same measure of damages to realty. *Kremeyer* v. *Shumate* (1959), 20 Ill. App. 2d 542, 156 N. E. 2d 271.

We have examined the Indiana authorities and have found no cases in point to sustain or deny the appellant's position. A court of law has no power to oversee the use of damages once they are awarded in action such as in the case at bar. It is our opinion that a plaintiff is entitled to damages regardless of whether anything is done to correct the injury either by repair or by sale. We are concerned with a *measure* of damages only, and not the actual use by the injured party of any damages awarded. See *Bates* v. *Warrick* (1909), 77 N. J. L. 787, 71 Atl. 1116, 7 A. L. R. 294. In addition, so many considerations go into a decision of whether or not to repair, we can see no valid reason for limiting a non-repair case to the "before and after" test. A repair estimate is no less reliable than estimates as to market values. Consequently, we hold that the question of actual repair of the building does not change the measure of damages.

Another issue inherent in the facts at bar is the burden of proof. Under the Indiana authority, if as in the facts at bar,

the cost of restoration is used, is it incumbent upon the appellee to show the market value before the damage in order to establish the character of the injury as being permanent or non-permanent? The appellee did not submit any evidence of the market value of the building before the damage. Consequently, if the appellee must show the market value of the building before the injury as well as the restoration cost, then the lower court should be reversed for the record contains no evidence on this point. We have found no Indiana cases which directly answer this problem.

It is interesting to note that even if we had followed the measure of damages suggested by the appellant, i. e., the "before and after" test or restoration cost whichever is less, some jurisdictions which accept this view do not place the entire burden of proof on the plaintiff. Where the plaintiff submits only evidence of the cost of restoration, it is incumbent on the defendant to show that the "before and after" test is less. *Hartshorn* v. *Chaddock* (1892), 135 N. Y. 116, 31 N. E. 997; *Engel* v. *Dunn County, supra.* We believe the cases are equally applicable to the measure of damages adopted by this court. It must be assumed that when the appellee submitted repair costs, it considered the building to be repairable and not permanently damaged. There is testimony to this effect in the record. Indeed it would seem strange to require a party to carry the burden of proof as to a fact which might be adverse to his cause. Consequently, if the appellant was of the opinion that the building was permanently damaged, the burden was on it to demonstrate such and failing to do so, the appellant has waived this question. At this stage in the proceedings, the appellant cannot ask that the case be returned to the lower court merely to determine the market value of the building before the injury. Therefore, we hold that the appellee has carried his burden of proof by showing the restoration costs. If the appellant desired to take advantage of a more beneficial measure of

damages to the effect that the building was permanently damaged, it was incumbent on the appellant to demonstrate the same by evidence of probative value.

Therefore, we hold that the judgment of the trial court is supported by the evidence and is not contrary to law and should be affirmed.

Judgment affirmed.

Smith, C. J. and Bierly. J. concur.

Mote, J. dissents with opinion.

## DISSENTING OPINION

MOTE, J.—I wish to render a dissent herein. It seems to me that the majority labors under a misapprehension concerning the burden of a plaintiff in an action when, by his complaint, he establishes the theory upon which he proceeds. As the majority opinion here states, the complaint was founded on an action *ex contractu* and not in *tort,* and thus, if the plaintiff (appellee) were entitled to recover it would necessitate proving the material allegations of his complaint by a preponderance of the evidence on the theory therein adopted. I take no stock in the proposition that one may bring an action *ex contractu* and recover in *tort,* particularly in light of the record before us herein. The law books are full of opinions and decisions on this question.

It is said that the lease between the parties is not in evidence. On whom does the responsibility rest for introducing and making a part of the record the lease between the parties?

We may admit that the plaintiff (appellee herein) did introduce evidence of damages to the building on which appellant's sign rested, and without objection; however, at the close of plaintiff's evidence the defendant (appellant) moved for finding and judgment and we think it was entitled to a finding in its behalf and a judgment accordingly, for the reason that the appellee had not sustained the burden of proof and the theory of its complaint. As we view the matter, a de-

fendant is not absolutely required to object to proffered testimony or evidence which is not designed to prove the material allegations of a complaint. As in the case before us, we conclude that appellee made a sufficient record by its motion for finding and judgment at the conclusion of appellee's evidence, and that upon the overruling of said motion, it very properly could offer evidence to rebut appellee's evidence on tort, thus establishing at least two theories of defense, either one of which would be sufficient.

One of the more recent cases on this point is *Michel* v. *Forde* (1963), 135 Ind. App. 360, 191 N. E. 2d 507. The Supreme Court refused transfer thereof. A number of authorities were cited therein which hold, in effect:

> " 'That a complaint must proceed on some definite theory, which must be adhered to throughout the trial and upon appeal, is so thoroughly settled that the citation of authorities is unnecessary.' "

And in *Indianapolis Real Estate Board* v. *Willson et al.* (1933), 98 Ind. App. 72, 187 N. E. 400, in reversing the trial court, it was said that:

> "The evidence given by the appellees in the trial of the case should sustain the cause of action and verdict upon the theory of the complaint, . . ."

In *Michel* v. *Forde, supra,* there is a quotation from *Louisville N. A. & C. Ry. Co.* v. *Renicker* (1893), 8 Ind. App. 404, 35 N. E. 1047, which states:

> " 'It is not sufficient to say that the evidence is sufficient to entitle the appellee to recover upon some theory; but the question is, does it entitle her to recover upon the theory of the issues? The evidence must establish the case made by the complaint, and, if there is no evidence to sustain the cause of action upon the theory of the complaint, the verdict is contrary to law. As said by the court in *Bosseker* v. *Cramer, supra* [18 Ind. 44] : "We think a verdict which is contrary to law is one which is contrary to the principles of law as applies to the facts which the jury were called upon to try,—contrary to the principles of law which should

govern the cause. *Robinson Machine Works* v. *Chandler* [1877], 56 Ind. 575. In the case of *Boardman* v. *Griffin* [1875], 52 Ind. 101, the court said: *"When the trial of a cause is by the court,* instead of a jury, whether the court is required to find the facts specially or not, it *cannot, any more than a jury, go outside of the case made by the pleadings.* In such cases, as well as in others the parties must recover upon the allegations of the pleadings. They must recover *secundum allegata et probata,* or not at all. It must be so, in the nature of things, so long as our mode of administering justice prevails. *It would be folly to require the plaintiff to state his cause of action, and the defendant to disclose his grounds of defense, if, on the trial, either or both might abandon such grounds, and recover upon others, which are substantially different from those alleged."* ' See also: *Discher et al.* v. *Klapp et al., etc.* (1954), 124 Ind. App. 563, 117 N. E. 2d 753."

I am also of the opinion, notwithstanding my conviction that the appeal should be reversed for the reasons set forth above, that there is a lack of competent, substantial, pertinent, relevant evidence in the record concerning damages.

Likewise, I think it ought to be presumed that if an owner of a building is to lease the roof for the installation of an outdoor sign thereon, there is an implication that the building and the roof are adaptable and sufficiently sound engineering-wise to withstand the load of the sign. But returning to the first and foremost reason for reversal of the judgment below, in light of what has been stated, we conclude that the trial court should have sustained the motion at the conclusion of the appellee's evidence for finding and judgment, and also, that the verdict and judgment are contrary to law as not sustained by sufficient evidence upon the theory of the complaint.

NOTE.—Reported in 218 N. E. 2d 141.