**INDIANA INSURANCE COMPANY,**
Plaintiff,

v.

**HUSSEY SEATING COMPANY,**
Defendant.

**No. IP 95–844 C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 1, 1997.

Craig Antas, Clausen Miller, P.C., Chicago, IL, Richard Norris, Norris, Choplin & Schroeder, Indianapolis, IN, for Plaintiff.

Thomas B. Blackwell, Kightlinger & Gray, Indianapolis, IN, for Defendant.

## ORDER

BARKER, Chief Judge.

Defendant, Hussey Seating Company (Hussey), moves to exclude the testimony of Plaintiff Indiana Insurance Company's damages expert, Robert Smith (Smith), on two grounds: (1) Smith did not prepare and sign his Rule 26(b) Report as required by the Rules of Civil Procedure; and (2) Smith's Report only disclosed damages calculations on a replacement cost basis which, Defendant maintains, is the incorrect measure of damages under Indiana law.

Defendant has briefed this motion twice— first, in a motion to exclude Smith's testimony and second, in a motion *in limine*. On September 25, 1997, the Court held a hearing on these issues and, on September 26, 1997, further propounded five written interrogatories to the parties' counsel in order to ensure a proper and fair determination of the issues raised. Having fully considered Defendant's motions and the evidence adduced on these issues, the Court hereby *denies* Defendant's motion to exclude the testimony of Smith, but, pursuant to Rule 37, orders that sanctions be imposed against Plaintiff for Plaintiff's failure to comply with the clear requirements of Rule 26 disclosure provisions. Plaintiff accordingly is *ordered* to pay Defendant's expenses (costs and attorneys fees) incurred in relation to both motions to exclude Smith's testimony, Defendant's expenses incurred in responding to the Court's September 26th interrogatories and Defendant's attorneys' fees for the two hours that Defendant's counsel spent addressing these issues in court on September 25th, 1997.

### Discussion

█ Federal Rule of Civil Procedure 26(a)(2)(B) provides that expert disclosures be "accompanied by a written report *prepared* and *signed by the witness.*" Fed. R.Civ.P. 26(a)(2)(B) (emphasis added). Although Plaintiff timely disclosed a written report to Hussey in January, as required by the parties' case management plan, Smith failed to sign it. To make matters worse, when asked in his deposition on May 23, 1997, if he had prepared the written report disclosed to Hussey, the following exchange took place:

Q: Mr. Smith, why don't we start off with your Rule 26(a)(2) disclosure, if we could mark that as Defendant AAI exhibit 1. [Exhibit marked]

Q. If you could, identify what has now been marked as AAI's Exhibit 1.

A: Rule 26(a)(2) disclosure of Robert E. Smith.

Q: Who prepared that?

A: Clausen Miller [Plaintiff's counsel].

Smith Dep. at 12–13.

Fortunately for Plaintiff, the deposition did not conclude on the spot. Instead, Smith was asked if there was any part of the Report that he had prepared. Smith explained that he prepared the nine opinion reports contained in "Tab D" of the Report and that the other documents contained in the Rule 26 disclosure were either work papers he used in the course of adjusting North Central's

insurance claim or summaries of his qualifications or his "expert" opinions which were actually written by Plaintiff's lawyers. Smith Dep. at 13–17. Thus, although he had not signed the Report, Smith did substantially adopt it as his own, testifying that the opinions contained in the disclosure were his. *See* Smith Dep. at 15–17.

We are disturbed that Plaintiff's counsel's compliance with Rule 26 disclosure requirements was non-chalant, if not half-hearted. To turn over a report to Hussey which was neither signed nor a version naturally embraced by Smith does not suffice under the Rule. Yet we do not believe that these technical discrepancies warrant an order barring Plaintiff from introducing Smith's testimony at trial.

Unquestionably, Rule 26 requires an expert witness to prepare his own Rule 26 Report. Nevertheless, the Advisory Committee Notes to Rule 26 contemplate the assistance of counsel in preparing an expert's report:

Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness *and it must be signed by the witness.*

Rule 26, Advisory Committee Notes (emphasis added).

In *Marek v. Moore,* the court was confronted with a situation similar to the one we face in the present case. 171 F.R.D. 298 (D.Kan.1997). In *Marek,* an expert had prepared a report which he submitted to the counsel which had engaged him. The lawyers made authorized revisions, fleshing out certain parts of the report, and then submitted the revised, unsigned version to opposing counsel as their expert's rule 26(a)(2)(B) report. *Marek,* 171 F.R.D. at 300. As in our case, the *Marek* expert stated in his deposition that he had not prepared the report. *Id.* Opposing counsel moved to strike the expert report.

The *Marek* court declined to strike the report, stating, "[u]nlike the attorney, the expert witness more likely preoccupies himself with his profession or field of expertise. He may have little appreciation or none whatsoever for Rule 26 and its exacting requirements for a legally 'complete' report of the expert opinions, including all the 'data or other information'; and designating all supporting exhibits." *Marek,* 171 F.R.D. at 301.

The court continued:

"To help ensure complete disclosure of the required information, counsel ordinarily should supervise preparation of the expert's witness report. Such assistance is permitted, though the report should be written in a manner that reflects the testimony to be given by the expert witness *and must be signed by the expert.*"

*Marek,* 171 F.R.D. at 301 (quoting William W. Schwarzer, et al., Civil Discovery and Mandatory Disclosure: A Guide to Efficient Practice § 1[b][3] (2nd ed.1994)) (emphasis added).

Although Smith apparently did not assemble the papers comprising his Report nor did he write all of them, he testified, for example, that one of the documents not prepared by him was "paraphrased" by the lawyers from Smith's explanation of his qualifications. This type of assistance seems clearly to fall within the type permitted by Rule 26(a)(2)(B). More important, "Tab D" of the Report, which contains Smith's work papers and schedules, including certain of his opinions and the bases for those opinions, was, in fact, prepared and adopted by him at his deposition. Smith Dep. at 15–17. Nevertheless, Plaintiff plainly violated Rule 26 by failing to have Smith sign the Report and by the Report not being written in a manner that reflected the testimony specifically to be given by him and embraced by him.

Pursuant to Rule 37(c), a party's failure to comply with Rule 26(a) results in an "automatic and mandatory" exclusion of expert testimony, unless the party to be sanctioned can show that the violation was "justified or harmless." *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir.1996). The Court is persuaded that Plaintiff's failure to

comply technically with Rule 26 was a harmless violation because the Report was timely disclosed and Defendant was able to depose Smith notwithstanding the Report's technical deficiencies and, in so doing, avoided being prejudiced by the failures under Rule 26. *Cf. Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir.1996) (affirming district court's exercise of discretion where it did not exclude expert testimony because opposing party did not appear to have suffered prejudice from untimely disclosure of expert report and it had sufficient time to prepare for deposition of expert witness). Thus, despite Plaintiff's violation of the letter of Rule 26, both by failing to have the Report signed and by counsel's rendering so much assistance in compiling the Report that Smith did not feel comfortable embracing it as his own, we find that these violations were, ultimately, harmless to Defendant.

 Significantly more problematic, however, is Defendant's contention that Smith's expert Report reflects calculations with respect to the damage to personalty lost in the fire based only on its replacement value. Indiana law requires that damages to personalty be calculated according to fair market value, and fair market value is not the same thing as replacement value. *Bottoms v. B & M Coal Corp.*, 405 N.E.2d 82, 93 (Ind.App.1980) (damage to personal property is measured by the "property's fair market value at the time of the loss. Fair market value is defined as the price at which a willing seller and willing buyer will trade."); *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349, 352, 354 (Ind.1982) (distinguishing actual cash value from replacement cost and equating actual cash value and fair market value). Defendant maintains that Smith included only replacement cost value calculations in his Report because the policy Indiana Insurance Company issued to North Central provided for payment equal to replacement costs and in making his calculations, Smith was acting as Indiana Insurance Company's claims adjuster under the policy. Defendant argues that Smith should have assessed the value of the personalty destroyed in the North Central fire at its fair market value and disclosed those figures in his expert report if he expected to be able to testify to those damages.

Defendant is correct. Apparently, this problem was initially raised at Smith's May 23, 1997 deposition. Plaintiff's response was, for the first time, to produce Smith's fair market value calculations of the personalty damages at Smith's second deposition of June 30, 1997, achieved by imposing a blanket 25% reduction to the cost of replacement. Smith Dep. at 182. Thus these fair market value figures were not disclosed in Smith's expert report.

There simply is no excuse for Plaintiff's untimely assessment of and disclosure of its personalty damages on a fair market value basis, let alone its failure to timely disclose those figures in Smith's Rule 26 Report. Plaintiff maintains that these violations were harmless to Defendant because it had turned over, as discovery, all of the supporting documents used by Smith to calculate the fair market value of the personalty damages and, therefore, that Defendant's motion to exclude Smith's testimony should be denied.

On this point, the Court disagrees. Plaintiff's failure to calculate and disclose the fair market value of personalty damages was not harmless to Defendant, whose ability to depose Smith on his opinion and prepare for trial was necessarily impeded by the eleventh hour disclosure of Smith's fair market value calculations of its personalty damages.[1] That

---

1. The Court is less concerned about Plaintiff's failure to disclose the fair market value of the real estate because, under Indiana law, Plaintiff may seek the cost of restoration of a building destroyed by fire when the loss can be characterized as non-permanent. *General Outdoor Adv. Co. v. La Salle Realty Corp.*, 141 Ind.App. 247, 218 N.E.2d 141, 151 (1966). Obviously, the Plaintiff is proceeding under this measure of damages. *See* Transcript of Colloquy, September 25, 1997. (Mr. Antas: "[t]he damages claimed by Indiana Insurance Company will be the cost of restoration on the building, which is approximately $3.7 million. The fair market value on the personalty, which is $280,000 and then extra expense that Indiana [Insurance Company] incurred to reduce the amount of damage to the school, that totals $4,053,000."). "When the plaintiff submits only evidence of the cost of restoration, it is incumbent on the defendant" to demonstrate that the injury to the building was,

Plaintiff may have turned over during discovery the documents supporting Smith's calculations, in addition to countless other documents, is irrelevant. Rule 26 requires an expert witness to disclose his or her opinions and the bases for those opinions in a single report. Plaintiff violated Rule 26 when it failed to do so.

Under the circumstances, Defendant's request that Smith's testimony be excluded is thoroughly appropriate. Compounded by its technical violations, Plaintiff's substantive violations of Rule 26 merit a sanction. Nevertheless, the Court is reluctant to impose so severe a sanction as to exclude the testimony of the witness who appears to be Plaintiff's primary damages expert. Although the Court has determined that Plaintiff's failure to timely calculate and disclose Smith's fair market value calculations as to its personalty damages was not harmless to Defendant, we also find the harm was not significantly prejudicial. The burden was on Plaintiff to prove that its violation was harmless, see *Finley, supra,* but Defendant has not contended that it was significantly prejudiced or that its defense was hampered by Plaintiff's violations. Accordingly, we *deny* Defendant's motion to exclude Smith's testimony as to personalty damages and direct that, pursuant to Rule 37, Plaintiff reimburse Defendant's expenses (costs and attorneys fees) incurred in asserting the motions to exclude Smith's testimony, in responding to the Court's September 26th interrogatories and the two hours spent on September 25, 1997, in discussing the matters in court pertaining to the scope and propriety of Smith's testimony at trial.

in fact, permanent and the measure of damages a function of the fair market value of the real estate. *La Salle,* 218 N.E.2d at 152. (A permanent injury is one where "the cost of restoration [of the building] exceeds the [fair] market value of the building prior to the injury." *La Salle,* 218 N.E.2d at 151.) Defendant concedes that it has no damages' experts prepared to testify at trial and, thus, Plaintiff's failure to disclose the fair market value of the real estate does not appear to have prejudiced Defendant. Indeed, it is patently clear in the case at bar that the loss to the gymnasium was non-permanent as evidenced by the fact that it was rebuilt. The Court notes, however, that certain of Smith's figures as to the cost of restoration of the real estate appear to include costs it paid pursuant to Indiana Insurance's obligation under North Central's policy, which arguably were not injuries borne by the school system. Although not a reason to exclude Smith's testimony, Defendant will be, of course, free to challenge Smith's cost of restoration numbers on cross-examination.