PAUL LOKER *versus* ISAAC DAMON *et al.*

The county commissioners, having adjudged a town way to be of common convenience and necessity, located it and made their return, which was duly recorded ; an order was thereupon passed by them, requiring the town to complete the way, but allowing the proprietor of the land to remove all property not required for the construction of the way. It was *held*, that the town way did not become such by the mere force of the adjudication, that it was of common convenience and necessity ; and that a person breaking down the fence for the purpose of passing over such way, after the expiration of the time allowed to the proprietor of the land for the purpose of removing the property, but before the road was constructed, was liable to an action of trespass by such proprietor.

*It seems*, that the town could not in such case legally break down the fence in order to construct the road, before the expiration of the time allowed to the proprietor for the purpose of removing the property, provided there were growing crops on the soil, to the protection of which the fence was necessary.

In assessing damages in trespass *quare clausum* the immediate consequences of the injurious act are to be regarded, and not remote, speculative and contingent consequences, which the party injured might easily have prevented by his own act. Thus, where the trespass consisted in removing a few rods of fence, it was *held*, that the proper measure of damages was the cost of repairing it, and not the injury to the subsequent year's crop arising from the defect in the fence, it appearing that such defect was known to the plaintiff.

TRESPASS *quare clausum.* The declaration set forth, that the defendants destroyed and carried away ten rods of the

plaintiff's fences, in consequence of which certain cattle escaped through the breach and destroyed the plaintiff's grass, and that he thereby lost the profits of his close from September, 1832 to July, 1833.

Loker
v.
Damon.

The defendants pleaded, severally, first, the general issue ; and secondly, a right of way, setting forth, that at the times when the trespasses were alleged to have been committed, and at the places where, &c., there was a town way, over which all persons had a right to pass, which way was obstructed by the fences, and that in order to pass these it was necessary to remove them ; which they accordingly did.  On these pleas issues were joined.

At the trial before *Morton* J. the plaintiff proved, that the defendants, in the latter part of November, removed portions of the stone wall inclosing the *locus*, and thus made a passage-way through it ; that these breaches were not repaired till after the middle of the succeeding May, when they were closed up by the plaintiff ; and that in the mean time, the cattle of the plaintiff and others passed into the close, and fed upon the grass ; that the close contained four or five acres ; and that in 1832, it produced about a ton of hay to the acre.  The close was a part of the farm on which the plaintiff lived.

The defendants introduced in evidence a copy of the record of the county commissioners.  By this record it appeared, that the county commissioners, having at their session in May, 1832, adjudged a new town way crossing the plaintiff's close, to be of common convenience and necessity, duly located such town way on August 16, 1832 ; that the return of the commissioners was made and recorded at their session on September 18, 1832 ; that an order was passed at the same session, by which the proprietors and occupants of the lands were allowed until November 1, 1832, for the purpose of taking off the wood, timber trees, and other property not required for the construction of the road, and the town of East Sudbury, in which the road lay, was directed to open, construct and complete it so as to be safe and convenient for passage, to the extent and in the manner therein particularly stated, on or before June 1, 1833.

The record as originally made, only set forth the boundaries

and monuments of one of the sides of the road ; but by an amendment of the record ordered and made in January, 1835, it appeared, that the road was located two rods wide on the westerly side of the lines and monuments originally mentioned in the record: It was proved, that the amendment was in conformity with the actual location of the town way, as stated by the county commissioners at the time ; and that the road was constructed by the town of East Sudbury in the years 1832, 1833 and 1834.

It was also proved by the defendants, that in the winter season the new road was the shortest route for them to the middle of the town.

The plaintiff proved, that at a session of the county commissioners in May, 1833, he made a verbal application for leave to replace the wall in question, and that he had verbal directions from them so to do ; that at the time of the supposed trespasses a part of the road was impassible, and that it had not been worked at all, except that the defendants had ploughed a small portion of a section of the road, which they had contracted to make.

The court ruled, that the evidence on the part of the defendants was insufficient to support their pleas in bar ; and also, that the plaintiff was entitled to recover in damages, only enough to remunerate him for replacing the fences.

A default was entered by agreement. If the Court should be of opinion, that the pleas were supported by the evidence, the plaintiff was to become nonsuit ; otherwise the default was to stand, and the damages to be assessed at the sum of $1·50, unless the Court should be of opinion, that the plaintiff could recover damages beyond a remuneration for replacing the fences ; in which case the damages were to be assessed upon such principles as the Court should determine.

*Josiah Adams* and *Keith,* for the defendants.

*Mellen,* for the plaintiff, cited *Craigie* v. *Mellen,* 6 Mass. R. 7 ; 2 Kent's Comm. 275 ; 2 Burlamaqui, 149 ; *Bliss* v *Deerfield,* 13 Pick. 102 ; *Todd* v. *Rome,* 2 Greenl. 55 ; 3 Dane's Abr. 249.

SHAW C. J. delivered the opinion of the Court. The plaintiff having proved title to the close, and having shown that the

defendants entered and removed the fence, the only question of law is, whether the defendants have supported their plea in bar. This plea is, that the *locus in quo* was at the time, &c. a town way, over which all persons had a right to pass, which was obstructed by the fences, and in order to pass, the defendants removed them, as they had a right to do. The trespass is alleged to have been committed in November, 1832. The only evidence offered to support this plea, is the order and record of the county commisioners, passed at the session of that board, September 18, 1832, as stated in the case. I do not now consider the effect of the amendment, but regard it as if the order had originally been, what it was made by the amendment, supposing it unobjectionable.

Now the defendants contend, that this was an actual town way for the use of the citizens, from the time of the adjudication, and may be pleaded as such. But we think it impossible to maintain that position. It is not the magic of a judicial decree, that converts forests and morasses into actual highways. In fact many things are to be intermediately done, and this is plainly contemplated by the statute. In this case the owners of the land, over which the way was laid, were allowed until the 1st day of November following to remove from the premises any wood, timber trees, or other property not useful for the construction of the way. This being an order which the commissioners were empowered to make, would probably be deemed sufficient to protect the fences and the close, even against the town and its agents, provided there were growing crops on the soil, to the protection of which the fences and the maintenance of the close were necessary.

It may be well admitted, that by force of such an order, the way is laid out to some purposes, as to justify the town and its agents to enter for the purpose of making and constructing the road and fitting it for travel. *Cragie* v. *Mellen*, 6 Mass. R. 7. But this does not sustain a plea, of its being a way for all citizens, before it has been so made and constructed. So if the town, intending not to take the whole time allowed them to make and complete the road, should finish it, and actually lay it open for travel, before the time fixed by the order, it might be considered as a highway, from the time it should be so in fact laid open and offered to the public

But where no agent of the town has entered for the purpose of making the road, where the time has not elapsed, allowed the town to make the road and lay it open for travel, we are of opinion, that, by mere force of the adjudication, the place cannot be pleaded as an actual way for all travellers and citizens, and that the plea in bar is not supported. The consequence is, that the plaintiff is entitled to judgment.

The Court are of opinion, that the direction respecting damages was right. In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative and contingent consequences, which the party injured might easily have avoided by his own act. Suppose a man should enter his neighbour's field unlawfully, and leave the gate open ; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open, and passes it frequently, and wilfully and obstinately or through gross negligence leaves it open all summer, and cattle get in, it is his own folly. So if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of damage. But if the owner suffers the window to remain without repairing a great length of time after notice of the fact, and his furniture, or pictures, or other valuable articles, sustain damage, or the rain beats in and rots the window, this damage would be too remote. We think the jury were rightly instructed, that as the trespass consisted in removing a few rods of fence, the proper measure of damage was the costs of repairing it, and not the loss of a subsequent year's crop, arising from the want of such fence. I do not mean to say, that other damages may not be given for injury in breaking the plaintiff's close, but I mean only to say, that in the actual circumstances of this case, the cost of replacing the fence, and not the loss of an ensuing year's crop, is to be taken as the rule of damages, for that part of the injury which consisted in removing the fence and leaving the close exposed.

*Judgment on the default, for the sum of* $1·50 *damages.*