IRVING ET AL. *v.* ORT ET AL.

[No. 18,820. Filed November 21, 1957. Rehearing denied December 19, 1957. Transfer denied January 29, 1958.]

*John E. Hoffman, James P. Murphy,* all of Ft. Wayne, and *Hubert R. McClenahan,* of Decatur, for appellants.

*Jerome J. O'Dowd, Bernard F. Novitsky,* both of Ft. Wayne, and *Ed A. Bosse,* of Decatur, for appellees.

KELLEY, J.—Appellees are the owners of farm land, approximately 96.67 acres, in Milan Township, Allen County, Indiana, upon which is located a gravel pit of some twenty acres. On the west side of said land, and extending, in an encircling fashion, around the north end of the land and dropping to the south along the east side of the land, flows the Maumee River. The pit extends lengthwise from west to east and its narrow portion extends widthwise from north to south. 16.4 acres of the land lies north of the pit and is

utilized as farm land. Between the west end of the pit and the river is a dike about 500 feet long, approximately 18 feet wide at the top and 80 feet wide at the base. It appears that the purpose of the dike was to protect appellees' land from overflowing water of the river in the event of high waters or a flood condition. The evidence discloses that the highest flood water line was in 1913 and that the present dike is about three and one-half (3½) feet higher than the record high mark at that point in the flood stage of 1913.

On January 1, 1947, the appellants were, and had been for many years prior thereto, engaged in the business of dipping sand and gravel and selling the same. On said date, the appellees, by written lease, granted appellants the exclusive right to remove sand and gravel from said pit for a five-year period from the said date of execution of the lease and appellants agreed to pay appellees seven (7) cents per ton for the sand and gravel removed therefrom. During the five-year term of the lease, appellants paid appellees $17,876.34 for approximately 261,000 tons of sand and gravel mined from the pit.

Upon or shortly prior to the expiration of the lease on December 31, 1951, appellants moved their equipment to a new location. Thereafter, appellees brought action by complaint against appellants, charging breach of the lease and praying damages therefor. Appropriate issues were made and the cause was submitted to the court for trial, without a jury. The court found for appellees and rendered judgment in their favor for $22,700.00.

That part of the lease which gives rise to the question deemed essential for our present determination is a sentence or clause contained in paragraph 5 thereof. Said paragraph 5 of said lease is as follows:

"5.   Said second parties shall have the right to re-
move the top dirt from said land and shall build
a wall or embankment next to the river so that the
river will not wash in on the farm land of said
first party.   Second parties shall plant shrubs
and willows on west dike to keep it from washing
and shall haul at least 200 loads of dirt each
year and place same on narrowest places of west
dike, keep all washouts filled and keep an open
road around the pit all times.   Said second party
shall, when moving equipment to a new location,
place all waste stone that isn't sold on the west
dyke.   Said first party shall have the right to
supervise the location where the top dirt is to
be hauled and dumped.   All dirt removed shall not
be piled other than is agreeable to said first party
at any time."

The particular clause or sentence contained in said
quoted paragraph which has occasioned the presented
difficulty is this:

"Said second party (appellants) shall, when mov-
ing equipment to a new location, *place* all waste
stone that isn't sold on the west dyke."   (Our em-
phasis.)

Appellants concede that they did not place upon the
west dike all the unsold waste stone mined during the
term of said lease.   To that extent they violated the last
above quoted provision of the lease and became re-
sponsible to appellees for damages in at least a nomi-
nal amount.   Appellants have challenged the court's
assessment of damages as being too large and this pre-
sents what we consider to be the potent charge of error.

The court adopted as the measure of damages "the
reasonable cost of doing what defendants (appellants)
promised to do."   It is thus apparent that the only al-
leged breach of the lease which the court considered as
worthy of the allowance of damages was that appellants
failed to put all the unsold waste stone on the west
dike as they had agreed to do.

In determining the recoverable damages in comparable actions, our Supreme Court, in *Lowe* v. *Turpie* (1896), 147 Ind. 652, 670, 44 N. E. 25, declared:

"It is the rule, settled beyond controversy, that the damages to be recovered must be the natural and proximate consequences of the breach of the contract; damages which are remote or speculative cannot be recovered. *Fuller* v. *Curtis,* 100 Ind. 237, 50 Am. Rep. 786; *Cline* v. *Myers,* 64 Ind. 304; *Loker* v. *Damon,* 34 Mass. 284; *Prosser* v. *Jones,* 41 Iowa 674; *Wire* v. *Foster,* 62 Iowa 114, 17 N. W. 174; *Osborne* v. *Poket,* 33 Minn. 10, 21 N. W. 752. *Hadley* v. *Baxendale,* 9 Exch. 341, the leading English, and one followed by the courts of this country, lays down the following rule concerning the measure of damages: 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.' "

The evidence discloses that appellants left some of the unsold waste on the bank of the pit and some had been dumped or pushed into the pit and rested under the water. The court found that the appellants "left eighteen thousand (18,000) cubic yards of waste stone in the gravel pit and four hundred (400) cubic yards of waste stone on a pile on the south side of the gravel pit." This finding is predicated upon the testimony of two witnesses for appellees.

One witness, A. K. Hofer, a professional Civil Engineer, stated, in material substance, that he calculated that there were eighteen thousand cubic yards of stone in the pit and a heap on the bank approximating four

to five hundred cubic yards; that he did not remove the stone from the water to measure it but took soundings; that he did not measure the center pile; that he did not know the contour of the land under it (the stone) ; that it would be impossible to measure the land under the stone from the surface without moving the stone; that his calculation is based *on the assumption* that the land under the stone is similar to the depth of the land adjoining the outside edge. That he estimated the cost of moving the stone from the bottom of the pit at about $1.25 a cubic yard and that on the bank at $.50 to $.60 a cubic yard, and that it would be necessary to dump it on the dike *and level with a bulldozer.* That in his opinion it would not be necessary to place the entire 18,500 cubic yards to stabilize the dike; that the dike should have a broader base and, in his opinion, it would be necessary to deposit materials on each side of the dike to give it a broader base to hold the velocity of the water, probably four or five thousand yards of stone and gravel.

The other witness, John Dehner, a contractor engaged in sewers, water lines, excavations, and bridges, said, in material substance, that he would assume that it would cost $1.25 per yard to move the stone from the pit to the west dike *and spread it along the river side of the dike,* which figure of $1.25 includes the use of equipment *to spread it;* that the charge would be seventy-five cents per yard to move the stone and dump it on the west dike, without the service of spreading it.

The foregoing evidence was the only evidence as to the amount of unsold waste stone unplaced on the west dike and the cost of moving it there. It is evident, therefore, that the court arrived at the amount of its judgment of $22,700.00 upon the calculation of 18,000 cubic yards of stone in the water in the pit at $1.25 per cubic yard, a total of $22,500.00, and 400 cubic

yards of stone on the south bank at fifty (50) cents per cubic yard, a total of $200.00.

It seems clear that the evidence as to the cubic yards of waste stone in the pit rises no higher than a conjecture based wholly on an unsubstantiated assumption. It can do no other than establish the foundation for speculative damages. It seems clear, also, that the estimated cost of moving the stone to the west dike, as given by the said witnesses and adopted by the court, includes and is predicated upon the rendition by appellants of services or work which we have been unable to find were required of them by the lease. The witness, Hofer, based his estimate of the cost per cubic yard upon the moving of the stone to the west dike and levelling it with a bulldozer; and the witness, Dehner, based his estimate upon the moving of the stone to the west dike and spreading it along the river side of the dike. He further said that without the service of spreading the stone, his "charge" would be seventy-five (75) cents per cubic yard. We find nothing in the said controversial paragraph of the lease which required the appellants to adopt any special or defined method, manner, or means of putting the stone on the dike, or requiring them to level the same or to spread it along the river side of the dike. All they were obligated to do by the lease, insofar as a fair reading thereof conveys to us, was to "place all waste stone that isn't sold on the west dyke." We think that, without more, it is apparent the award of damages appealed from was excessive in that it was based on the performance of work not required of the appellants by the terms of the lease and on a wholly speculative estimate as to the amount of waste stone subject to the above quoted provision, and without consideration of the undisputed testimony of Hofer that it would not be necessary to place the entire 18,500 cubic yards of

stone on the dike, "probably four or five thousand yards of stone and gravel."

The fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited in recovery to the loss actually suffered by the breach; and he is not entitled to be placed in a better position than he would have been if the contract had not been broken. 15 Am. Jur., *Damages*, Sec. 43, pages 442 and 443. We have been referred to no evidence: that any injury to appellees has resulted by reason of the stone remaining in the pit; that the removal of the stone from the pit is imperative; that appellees have contracted for or paid out anything for its removal or that appellees will or ever intend to move the stone to the dike; or that appellees are in anywise worse off than they would have been if appellants had sold the waste stone, as authorized by the lease, and paid appellees the seven (7) cents per ton stipulated in the lease. Notwithstanding the apparent lack of evidence that appellees have suffered any substantial injury or loss by reason of appellants' said breach of the contract, said appellees are nevertheless awarded $20,757.50 over and above the sum of $1,942.50 they would have received if appellants had sold the stone and paid appellees the seven (7) cents per ton.

By the terms of the lease here involved, appellants were entitled to exercise an option or, more accurately, to select an alternative. Under the contract they were bound to either sell the waste stone and pay appellees the sum of seven (7) cents for each ton sold or to place the unsold waste stone on the dike. They did neither. In such case, the measure of damages, in an action for the breach, is the loss arising by reason of the failure of the contractor to do that *which is the least, not that which is the most* beneficial

to the injured party. 15 Am. Jur., Damages, Sec. 43, note 16, page 444. Measured by the rule just stated, the loss to appellees, as shown by the evidence, was seven (7) cents per ton on (estimated) 27,750 tons or $1,942.50.

As disclosed by the undisputed evidence, the valuation of the north 16.4 acres of appellees' land which the dike was to protect was $3,280.00. The total valuation of appellees' entire 96.64 acres, including said north 16.4 acres, was $19,300.00. Yet, appellants by their failure to sell the waste stone or place it on the dike, are subjected to a judgment of $22,700.00, without proof by appellees that they have suffered any substantial direct and naturally ensuing injury from the referred to breach or any special injury therefrom. While we agree with appellees that the damages are not to be measured by the land valuation, yet such valuation tends to reflect the incongruity and excessiveness of the judgment under the circumstances of this particular case as shown by the evidence.

For the reasons given, we are of the opinion that the damages granted by the court are excessive and that the judgment appealed from should be reversed.

Therefore, said judgment is reversed and this cause is remanded to the trial court with instructions to sustain appellants' motion for a new trial, and for further proceedings not inconsistent herewith.

NOTE.—Reported in 146 N. E. 2d 107.