JAMES A. OGLE AND WILMA RAE OGLE *v.* LLOYD WRIGHT AND LOUISE WRIGHT.

[No. 1-376A36. Filed February 28, 1977. Rehearing denied April 7, 1977. Transfer denied July 13, 1977.)

*Robert L. McLaughlin, Wooden, Stark, McLaughlin & Sterner,* of Indianapolis, *Richard N. Smith, Himelick, Himelick & Smith,* of Connersville, for appellants.

*Phillip F. Badell, Badell & Malson,* of Rushville, for appellees.

## CASE SUMMARY

ROBERTSON, C.J.—Buyer James A. and Wilma Rae Ogle (hereinafter Ogles) appeal from a judgment cancelling a conditional land sale contract and awarding damages and pos-

session to Seller Lloyd and Louise Wright (hereinafter Wrights).

On appeal, Ogles present the following issues for our review:
1. Whether there was sufficient evidence to support the trial court's finding that Ogles breached their land contract with Wrights.
2. If there was a breach, was the trial court's decision to cancel the land contract contrary to law?
3. Whether Wrights by their conduct, waived any right, to cancel the land contract.
4. Whether there was sufficient evidence to support the trial court's finding as to the damages sustained by Wrights as a result of alleged breach.

On June 3, 1972, the parties entered into a contract for conditional sale of real estate located in Fayette County, Indiana, for a total purchase price of $18,500.00.

Section XI of that contract provides:

"The Buyers, for credit of $10,000.00 shown as down payment shall furnish to Sellers one (1) double mobile home complete and fully equipped with water line and septic tank installations to meet ordinance requirements with concrete anchors for trailer foundation installed."

The mobile home was to be installed by Ogles on real estate owned by Wrights which is unrelated to the land purchased in the contract. The remaining $8,500.00 of the purchase price was to be paid by Ogles in equal monthly installments of $100.00 each, including interest on the unpaid balance at the rate of five percent per annum.

Shortly after the execution of the land contract, Ogle delivered the double mobile home to Wright's property where it was to be installed. On July 22, 1972, a dry well sewage system was delivered to the mobile home site. The dry well system was purchased by Ogles without consulting the Building Code Ordinance or the authorities responsible for issuing the permits required for sanitation systems in Fayette County.

On July 25, 1972, Mr. Wright approached Mr. Ogle on the job site and told him that the dry well system did not comply

with his obligation under Section XI of the contract to install a septic tank which met ordinance requirements. An argument ensued. Ogle claimed that the dry well was what they had agreed on, and that if Wright wanted a septic system he would have to pay for it or do it himself.

During the argument Ogle grabbed Wright's shoulder and turned him around. The same day, Wright filed assault and battery charges against Ogle for which Ogle was arrested. The case was subsequently dismissed.

The evidence is in dispute as to whether Wright told Ogle and his helper to leave the premises and not come back. However, Wright testified that since July 25, 1972, the date of the argument, he was not willing to allow Ogle back on his land to complete the installation.

Two days later, Wright signed a contract for another person to complete the mobile home installation and install the septic tank.

Ogle wrote a letter to the Wrights, dated July 31, 1972, to the effect that he was prepared to fulfill his part of the contract when he received written permission from Wrights to work on their mobile home.

Through a letter dated August 7, 1972, Wrights' attorney informed the Ogles that their failure to comply with Paragraph XI of the contract resulted in the Wrights independently contracting for completion of the installation, and the attorney insisted upon full compliance with the contract and repayment of the cost incurred by the Wrights.

During the early part of October, 1972, after being notified that the installation work had been completed, Ogle went to the office of Wright's attorney. Ogle looked at the charges of the contractor, and, though no demand was directly made for the total amount of the bill, he offered to pay one thousand dollars but no more. The offer was not accepted.

In the meantime, commencing with the execution of the contract in June of 1972 and continuing through January of 1973, Wrights accepted from Ogles all the monthly installments of principal and interest which were due under the land contract. Also, Ogles' attempt to pay the real estate taxes on the property being purchased was rejected by the county treasurer's office because the Wrights had paid the taxes.

On March 8, 1973, more than seven months after the July 25 incident, Wrights served upon Ogles a "Notice and Cancellation of Contract for Buyer's Default", in which they demanded repayment of the installation costs within ninety days, or they would consider the contract null and void. Such notice of default was accompanied by a return of Ogles' February payment under the land contract.

Ogles, through a letter from their attorney, denied Wrights' right to cancel and stated that Ogles would deposit all payments due under the contract in a bank account for the benefit of Wrights.

The Ogles first question the sufficiency of the evidence for the trial court's finding of breach. This court will not weigh the evidence nor determine the credibility of witnesses. The trial court's decision will be affirmed if there is substantial evidence of probative value to support the judgment. *Goff* v. *Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758.

There was sufficient evidence from which the trial court could conclude that Ogles breached their agreement to provide the mobile home with a septic tank disposal system. Ogles did not inquire into ordinance requirements for the sewer system, but instead proceeded to order the cheaper dry well system. When Wright informed Ogle that the dry well system would not meet county ordinance requirements, Ogle flatly refused to take it upon himself to procure an appropriate septic tank system. Failure to perform an obligation which he agreed in the contract to undertake

constituted a breach of that contract. 6 I.L.E. Contracts § 232 (1958).

The Ogles next contend that even if a breach is found, the cancellation of the contract was not the proper remedy.

The land contract provides in section IX,

> Seller's Remedies on Buyer's Default:
> "Time shall be of the essence of this contract.
>
> "In case of failure of Buyer to make any of the payments as they become due, or any part thereof, or perform any of Buyer's covenants, this contract shall, at the option of Seller, be forfeited and terminated and all payments theretofore made shall be retained by Seller as rent for the use of the Real Estate, and Seller shall have the right to re-enter and take possession of the Real Estate and, in addition, may recover any loss or damage which Seller may sustain by reason of any default; or Seller may sue (after giving the notice required by the next paragraph) and recover all of the unpaid balance of the purchase price which, at the option of Seller, shall become immediately due and payable. All sums payable pursuant to this contract are payable with accrued interest and with attorney fees, without relief from valuation or appraisement laws. The failure or omission of Seller to enforce his rights upon any breach of any of the terms or conditions of this contract shall not bar or abridge his rights upon any subsequent default.
>
> "Before Seller shall file in a court of competent jurisdiction any action in respect of this contract, he shall first serve on Buyer written notice of the default complained of and Buyer shall have 90 days from the posting or service of said notice to correct such default; provided, however 90 days' notice shall be required in the case of any default in payment of any monies agreed to be paid by Buyer herein.
>
> "Buyer agrees to pay the reasonable expense of preparation and delivery of any notice of default, including attorney fees if incurred."

The contract expressly provides that a failure by the Ogles to perform any of their covenants shall, at the option of the Wrights cause the contract to terminate and be forfeited.

The trial court, in effect, granted Wrights a rescission of the contract by providing for cancellation of the contract and

by attempting to return the parties to their respective positions before execution of the contract.

However, the Wrights prayed in their complaint for termination of the contract under its terms and for forfeiture of all prior contract payments.

"The declaration of a forfeiture for the breach of a condition of a contract, in accordance with a stipulation therein, is to be distinguished from a rescission of the contract in that it is an assertion of a right growing out of it. It puts an end to the contract and extinguishes it in accordance with its terms similarly to the manner in which it is extinguished by performance. Forfeiture terminates an existing contract without restitution, while rescission of such contract terminates it with restitution and restores the parties to their original status." 17A C.J.S. Contracts § 406 p. 493 (1963).

We are of the opinion that both the complete forfeiture requested by the Wrights in their action at law on the contract, and the remedy imposed by the trial court are improper in the case at bar.

The remedies available to a plaintiff seeking termination and forfeiture of a land sale contract, granted therein upon breach by the other party, were established by the Indiana Supreme Court in *Skendzel* v. *Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. denied* 94 S.Ct. 1421, 415 U.S. 921. Therein the Supreme Court held that forfeiture clauses may be enforced in selected situations, but in other cases the proper remedy is for the trial court to exercise its equity jurisdiction to enter a judgment of foreclosure pursuant to the mortgage foreclosure statute, IC 1971, 32-8-16-1 (Burns Code Ed.) and Ind. Rules of Procedure, Trial Rule 69(C). The Court stated:

"A forfeiture—like a strict foreclosure at common law—is often offensive to our concepts of justice and inimical to the principles of equity. This is not to suggest that a forfeiture is an inappropriate remedy for the breach of all land contracts. In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid

a minimal amount of the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any, equity in the property. However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exhorbitant monetary loss. We are persuaded that forfeiture may *only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law.*" (Emphasis added)

Because the "forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law," *Skendzel, supra,* the forfeiture term will not be enforced unless the breach is material and goes to the heart of the contract. *See, Goff* v. *Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758.[1] In *Goff* this Court adopted the following considerations to be used in determining the materiality of a breach as summarized in the Restatement of Contracts § 275:

"(a)  The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b)  The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c)  The extent to which the party failing to perform has already partly performed or made preparations for performance;

(d)  The greater or less hardship on the party failing to perform in terminating the contract;

(e)  The wilful, negligent or innocent behavior of the party failing to perform;

1. This Court, in *Faylor* v. *Brice* (1893), 7 Ind. App. 551, 34 N.E. 833, as quoted in *Goff* v. *Graham, supra,* stated that although forfeitures are not favored in law, where "it appears that the contracting parties agreed that a forfeiture should take place, upon the failure of one of the parties to the contract to comply with a material part thereof, courts will decree a forfeiture." That case involved a lease contract which provided for automatic forfeiture upon nonpayment of rent. The contract before this Court provides for forfeiture upon any breach, not upon breach of only a material part thereof.

(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract."

The evidence most favorable to the Wrights shows that they have had use of the mobile home since September, 1972. Thus, their sole loss is the cost of completing the installation. Damages would adequately compensate Wrights for Ogles' lack of performance. The Ogles partially performed by delivering the mobile home, performing some installation work, continuing payments on the contract, and having tendered a letter requesting permission to complete performance. The Ogles will lose possession and all title to the property being purchased which has substantially increased in value; the Wrights have all that they bargained for except reimbursement for the $2,800.00 bill for installation. The failure to check the ordinance requirements could be found to have been negligent, and the refusal to install the septic tank may have been willful. Finally, there is no doubt that Ogles would not fail to perform the remainder of the contract by making the scheduled payments.

Although the trial court made no finding on materiality, the failure to check ordinance requirements and refusal to install the septic tank might have been found by the trial court to be a material breach.

However, even if the breach were found to be material, we find that the Ogles do not fit within the exceptions stated by Justice Hunter in *Skendzel* in which forfeiture would be the appropriate remedy. *See: Donaldson* v. *Sellmer* (1975), 166 Ind. App. 60, 333 N.E.2d 862; *Bartlett* v. *Wise* (1976), 169 Ind. App. 125, 348 N.E.2d 652. The Ogles are not "abandoning or absconding vendee[s]", and they had paid more than a minimum amount on the contract at the time of default. The trial court found Ogles' equity in the land contract to be $7,200.00 as of July, 1972, which is almost forty percent of the total contract price of $18,500.00.

Strict application of the contract terms at law, we believe, as the court found in *Skendzel*, would have led to unconscionable results requiring intervention of equity. Equity will "look upon that as done which ought to have been done." Story, Eq.Jur. § 64(g). The trial court had jurisdiction to apply equitable principles, and in such a case:

"... equity will treat the subject matter as if the final acts and relief contemplated by the parties were accomplished exactly as they should have been in the first instance. Where discretionary power is not exercised by a trial court, under the mistaken belief that it was without this power, a remand and direction by a court of review is necessary and proper. 5 Am.Jur.2d § 773, p. 216, n.3 (cases cited therein). This is not an unwarranted interference with the trial court's function. Upon appeal to this Court, we have the judicial duty to *sua sponte* direct the trial court to apply appropriate equitable principles in such a case. 5 Am.Jur.2d, § 656, p. 107, citing: *Mark* v. *Kahn* (1956), 333 Mass. 517, 131 N.E.2d 758, 53 A.L.R.2d 908." *Skendzel, supra* at p. 650.

For the foregoing reasons, we remand with instructions to the trial court to enter a judgment of foreclosure on the vendors' (Wrights) lien pursuant to Ind. Rules of Procedure, Trial Rule 69(C) and the foreclosure statute IC 1971, 32-8-16-1 (Burns Code Ed.), and consistent with the *Skendzel* decision.

The Ogles further argue that Wrights waived their right, if any, to cancel the land contract by continuing to receive payments. Waiver is ordinarily a question of fact. *Shelt* v. *Baker* (1922), 79 Ind. App. 606, 137 N.E. 74. In the case at bar, it is a question of fact, and the trial court found against Ogles.

Waiver is a voluntary relinquishment of a known and existing right. With reference to a breach, waiver includes giving up the right to treat the contract as discharged because of the breach of the adversary. *Kentucky Natural Gas Corp.* v. *Indiana Gas & Chemical Corporation* (7th Cir. 1942), 129 F.2d 17. The burden of

proving the waiver is on the party claiming it. *Shelt* v. *Baker, supra.*

There is sufficient evidence to support the trial court's finding. In response to a request by Wright to properly complete the installation of the mobile home according to the specifications in the contract, Ogle refused. The breach was not ignored. By letter on August 7, 1976, and other letters, Wright requested repayment of the cost of completing the installation. A party who suffers damage due to the refusal of the other party to perform under the contract has a right to recover his expenses if he completes the work at his own expense. *Shank* v. *Trustees of McCordsville Lodge No. 338* (1909), 47 Ind. App. 331, 88 N.E. 85.

Unlike cases in which a deadline for payment is passed without a request for prompt payment, here there was no time established for Ogles' performance. Consequently Ogles were never led to believe that Wrights consented to their nonperformance. *Kentucky Natural Gas Corp., supra.* When the Ogles made no attempt to pay their obligation after demand and notice, the Wrights were justified in pursuing their remedies under the contract. We therefore affirm the trial court's finding that there was no waiver.

Finally, the Ogles contend that there is insufficient evidence to sustain the trial court's finding of damages.

The fundamental rule of damages is that the party injured by the breach of contract is limited in recovery to the loss actually suffered by the breach. *Irving* v. *Ort* (1957), 128 Ind. App. 225, 146 N.E.2d 107.

This Court may not reverse the damage award if it is within the scope of the evidence before the court. In determining whether there is sufficient evidence, we may not weigh the evidence nor judge the credibility of the witnesses. *Daly* v. *Nau* (1975), 167 Ind. App. 541, 339 N.E.2d 71; *Valcan Corp.* v. *M.T. Sparks, Inc.* (1968), 143 Ind. App. 543, 241 N.E.2d

862. If it is supported by the record evidence, the determination of damages is within the sound discretion of the trial court, and it is our opinion in this case that the trial court did not abuse this discretion.

Because the Ogles failed to perform, the Wrights were entitled to recover as damages the amount expended to complete the work which was necessary to be done in order to install the mobile home as the contract required. *Seavey* v. *Shurich* (1887), 110 Ind. 494, 11 N.E. 597; *Shank* v. *Trustees, supra.* The trial court properly considered evidence of the charges paid by Wrights to the contractor who completed the work. *Shank* v. *Trustees, supra; Seavey, supra.* We cannot, as a matter of law, say that the trial court was in error in determining that the cost owed to the Wrights for completion of the installation was $2,800.00.

In accordance with the above discussion, we affirm the trial court's decision finding a breach of contract, no waiver of the breach, and damages in the amount of $2,800.00. However, we reverse and remand in part with instructions to enter a judgment of foreclosure on the vendor's lien pursuant to Ind. Rules of Procedure, Trial Rule 69 (C) and the mortgage foreclosure statute IC 1971, 32-8-16-1 (Burns Code Ed.) as modified by TR. 69 (C). Said judgment shall include an order for the payment of the unpaid balance due on said contract, together with any interest due under the contract, and the statutory rate of interest from and after the date of entry. The order may also embrace all other proper and equitable relief that the court deems to be just, including the discretion to issue a stay of the judicial sale of the property pursuant to the provisions of TR. 69 (C), consistent with the holdings set out within this opinion.

Affirmed in part, reversed in part and remanded with instructions.

Lowdermilk, J., concurs; Hoffman, J. (participating by designation), concurs.

NOTE.—Reported at 360 N.E.2d 240.