**CITY OF ANDERSON, Indiana,**
**Appellant (Defendant Below),**
v.
**SALLING CONCRETE CORPORATION,**
**Appellee (Plaintiff Below).**

No. 2–277–A–50.

Court of Appeals of Indiana,
Second District.

Oct. 30, 1980.
Rehearing Denied Jan. 15, 1981.

Marvin E. Clanin, Fredrick R. Spencer, Anderson, for appellant.

William F. Radcliff, DeFur, Voran, Hanley, Radcliff & Reed, Muncie, Gene R. Johnson, Marion, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Salling Concrete Corporation (Salling) obtained a $300,762.76 judgment against the City of Anderson (Anderson) in its suit for a breach of lease of a sanitary landfill. Anderson appeals on various points relating to the reception, exclusion, and sufficiency of evidence and Salling on cross–appeal expresses dissatisfaction with the measure of damages applied by the trial court.

This case was transferred to this office on December 27, 1979.

As to both appeals, we affirm, subject to a reduction of the judgment for the amount of interest allowed.

## FACTS

The facts, in the light most favorable to the judgment, are these: Salling Concrete Corporation is the owner of some 36 acres of river bottom land just south of White River in Anderson, Indiana.

On July 29, 1957, Salling leased that land for a five year term to the City of Anderson, to be used "for the purpose of a sanitary landfill, in accordance with the specifications of the State Board of Health...."

Five years later, on June 1, 1962, Salling and Anderson agreed that Anderson still needed the landfill, and that Salling would be unable to use the land until it had been filled to a level grade; and so they conclud-

ed a new lease that is the basis for the suit at bar.

The new lease again provided the land should be used as a sanitary landfill, in accordance with State Board of Health regulations. The pertinent provisions provided that the lease should run until the land had been filled and graded so it was level with the borders of the land; that Anderson should raise all manholes, utility connections, and meters to the new grade level; that Anderson should cut down no trees on the land, without Salling's permission; that Anderson should pay rent of $1.00 per year, and any property taxes over $100.00; and that Anderson "shall not divert any of its said normal landfill debris from use as fill upon said real estate until said grade level above specified has been accomplished."

As of July 1, 1968, Anderson had stopped using the Salling land as a landfill, and was operating a sanitary landfill at a different site. During the time Anderson remained in possession, it had not operated the site as a sanitary landfill. Garbage and other refuse had been left exposed on the land. In 1968, however, Anderson did hire an earthmoving contractor to come into the site and bury the exposed debris. It does not appear that Anderson took any action in respect of the Salling land after 1968.

The Salling land was left some 214,000 cubic yards short of being filled to the level specified in the lease. The City did not raise any manholes to the level provided for in the lease, and even filled over some open manholes. In the period 1969 through 1975, inclusive, Anderson did not pay any taxes on the Salling land, leaving Salling to pay $1,232.74 beyond what it was obliged to pay under the lease. Anderson had cut down a number of trees along the bank of White River without Salling's permission.

On May 9, 1975, Salling Concrete Corporation filed the instant suit, claiming that Anderson was in breach of the 1962 lease, and praying that the lease be cancelled, and that damages be awarded sufficient to complete the filling of the land. A pre–trial order was entered on March 22, 1976. In pertinent part, it said:

## PRE–TRIAL ORDER

Pursuant to order of the Court the attorneys for the parties to this action appeared before A. Morris Hall, Judge in this cause in the Grant Circuit Court at Marion, Indiana, on the 22nd day of March, 1976, for conference under Rule 16 of Indiana Rules of Procedure. Plaintiff was represented by William F. Radcliff and Gene R. Johnson. City of Anderson, Defendant was represented by Marvin Clanin. Pursuant to said conference the following order is made:

. . . . .

3. Witnesses:

(a) The plaintiff's known witnesses may include any or all of the following: [A list was attached]

(b) The defendant's known witnesses may include any or all of the following: [A list was attached]

(c) In the event there are any other witnesses to be called to the trial, their names and addresses and general subject matter of their testimony will be reported to opposing counsel at least 10 days prior to the trial. However, parties may call rebuttle [sic] witnesses in addition to witnesses named above.

4. Exhibits.

Parties have exchanged exhibits.

Plaintiff will submitt [sic] engineering sketches to defendant, City of Anderson 10 days prior to trial.

This pre–trial order has been formulated after conference to which counsel for the respective parties have appeared. Hereafter this order will control the course of the trial and may not be amended except by order of the Court to prevent manifest injustice.

Dated this 22nd day of March, 1976.

A. MORRIS HALL
A. MORRIS HALL, JUDGE

The case was tried to the court in April of 1976.

Judgment was entered, with special findings of fact and conclusions of law, on Sep-

tember 1, 1976. In addition to the facts we have already set out, the court found that to fill the Salling land to the grade specified in the 1962 lease would cost $590,731.08. The court determined that had the City of Anderson continued to use the Salling land as a sanitary landfill, filling operations could have been completed in accordance with the lease by July 1, 1968.

The court found Anderson was in breach of the lease as of July 1, 1968. The court found that on that date, the land was worth $90,600; and had the terms of the lease been met, the land would have been worth $271,800, or $181,200 more. The court concluded as a matter of law that

the proper measure of damages in this case is the difference in the fair market value of the real estate [in] the condition in which it was abandoned by the defendant, City of Anderson, Indiana, on July 1, 1968, and the fair market value of the same real estate on July 1, 1968, had it been filled by the defendant, City of Anderson, Indiana, to the level specified in the 1962 lease which defendant agreed to do and failed to do.

Accordingly, the court awarded Salling the $181,200 difference in value, plus $118,-330.02, being interest at eight percent per annum to compensate Salling for the loss of the use of the difference in value, plus $1,232.74, representing the property taxes from 1969 onwards which the City of Anderson had failed to pay. The court cancelled the lease. The total judgment was in the amount of $300,762.76.

## ISSUES

Salling's cross–appeal presents one issue:
1. Is the proper measure of damages for breach of a lease for a sanitary landfill:
 (a) The cost to the landowner to complete the fill work agreed upon; or

1. Anderson did not preserve its issues 1(a), 1(b), and 4(b), having failed to make a timely objection at trial. These issues related to Salling's presentation of an amended exhibit after the close of the evidence. Anderson made no objection to the new exhibit until after judgment was entered against it. These issues are therefore waived.

(b) The difference between the fair market value of the land as it stood when the land was abandoned and the fair market value of the land had the terms of the lease been complied with?

The appeal by the City of Anderson essentially presents three additional issues:
2. Was the assessment of interest an award for the use of the Salling land, and therefore barred by the statute of limitations?
3. Did the trial court err in excluding two of Anderson's exhibits on grounds of irrelevancy, and seven rebuttal exhibits on the ground that they had not been exchanged with Salling in accordance with the pre–trial order?
4. Was the evidence sufficient to support any of the findings of the trial court?

 Particularly,

 (a) Was the evidence sufficient to justify the trial court's finding that had the 1962 lease been complied with, the Salling land would have been worth $271,800?

 (b) Was the evidence sufficient to show that the 1962 lease had never been modified?

 (c) Was the evidence sufficient to show that the City of Anderson had been in dominion and control of the Salling land since June 1, 1957?[1]

The contentions of the parties will accompany our resolution of each issue.

## DECISION

*ISSUE ONE*–Measure of Damages.

Is the proper measure of damages for breach of a lease for a sanitary landfill:

We have consolidated Anderson's other issues thus: Our Issue Two appeared in Anderson's brief as Issue 5(b); Issue Three was Anderson's Issue 4(a); and Issue Four was briefed as Issues 2(a), 2(b), 2(c), 3(a), 3(b), and 5(a).

(a) the cost to the landowner to complete the fill work agreed upon; or (b) the difference between the fair market value of the land as it stood when the land was abandoned (July 1, 1968) and the fair market value of the land had the terms of the lease been complied with?

*PARTIES' CONTENTIONS*—Salling contends that it was an object of the lease that it should eventually have possession of a parcel of properly filled land, and therefore if it is not to have the land properly filled, it must be given the funds to finish the job itself. The City of Anderson would contend that the great expense that repairing the Salling land would entail amounts to irreparable damage to the Salling land. Anderson, however, has waived argument on this issue by not complying with Appellate Rule 8.3(A)(7). Reposing great confidence in this court Anderson says it "will trust the court, in considering the proper measure of damages, to review the trial brief filed by the City with the trial court below." The reason for this trust is not to "burden the court's file with ... reiteration," (Appellant's reply brief, page 38) which may be understandable in view of the fact their briefs are about two inches thick.

*CONCLUSION*—The shortfall in the fair market value of the land is the proper measure of damages.

Two lines of cases in Indiana deal with the measure of damages in actions arising out of real property. The first deals with tortious damage to real property, some of the more recent cases crossing over into actions founded on contracts. The second line is concerned with the breach of construction contracts.

The first, or tort, line of cases emanates from the vintage case of *Anderson, Lebanon and St. Louis Railroad Company v. Kernodle* (1876), 54 Ind. 314. This was an early attempt to obtain an inverse condemnation from the defendant railroad, which had cut a right–of–way through the plaintiff's land. Our Supreme Court held that, since there was no statute authorizing inverse condemnation, Kernodle's sole relief was in ejectment. As the damage done by the railroad was found to be easily remediable, Kernodle's recovery was limited to the cost of repair; Kernodle could have recovered the diminution in the value of his land only if the damage had amounted to a permanent destruction of that value. 54 Ind. at 316.

The rule of the Anderson railroad case found its first application in general property law in *General Outdoor Advertising Company v. La Salle Realty Corp.* (1966), 141 Ind.App. 247, 218 N.E.2d 141. General had leased the roof of a building belonging to La Salle for the erection of a sign, which damaged the roof to the point where it would cost $25,000 to repair. The building itself had been built in 1952 at a cost of $65,000; there was no evidence as to how much the damaged roof depreciated the value of the building. The Appellate Court established a dual test for the measure of tortious damage to real property; if the damage is permanent, then damages are to be the difference between the value of the property before the damage was incurred, and the value after; if the damage is nonpermanent, then damages are to be in the amount of the cost of repair. 141 Ind.App. at 265, 218 N.E.2d at 150. As to buildings and other fixtures, the Court defined "permanent damage" as damage which would cost more to repair than the original value of the building; the court expressly refused to offer a definition of permanent damage to land itself. The opinion suggested that the burdens of proposing and submitting evidence in support of a decreased value theory of damages should be on the defendant; that is to say, if a party does not take care that a theory of damages be set before the trial court, that theory of damages is waived. 141 Ind.App. at 269, 218 N.E.2d at 153.

Whenever *General Outdoor Advertising* has been cited to support the awards of repair costs, such awards have been supported by one of two circumstances: either no evidence was produced to support a de-

crease–in–value theory of damages;[2] or the decrease in value plainly exceeded the cost of repair.[3]

In this first line of cases, this court was never squarely presented with the problem of saying what constitutes "permanent damage" to a parcel of unimproved land. In all previous cases, either the property in question was a building or fixture, or the question of permanent damage had not been timely raised. For the first time, the combination of a naked parcel of land and a thorough trial of the issues have put the problem of permanent injury to land itself squarely before us. Justice Hunter, in *General Outdoor Advertising*, recognized that "the difficulties in defining permanent injury in instances of damages to realty are largely due to the fact that realty can never be completely destroyed. In cases of injury to buildings which have a value separate from the land, the same questions do not exist." 141 Ind.App. at 267, 218 N.E.2d at 151.

If land is indestructible, the corollary must be that virtually any parcel of land could conceivably be landscaped into almost any shape or condition desired, provided only that the owner have unlimited funds to spend on the project. If no regard be given to cost or practicality, *any* injury to land is in a sense "repairable."

Before pursuing further the proper measure of damages for permanent injury to unimproved land, we seek enlightenment in the second, or contract, line of cases.

The rule for the measure of damages for breach of a construction contract is in *Morris v. Fox*, which decided that if construction work must be substantially undone in order to bring that work to a standard conforming to the original contract, then the proper measure of damages is not the cost of such repair work, but the difference between the final fair market value of the work as done and the fair market value had the work met the contract specifications. (1922), 79 Ind.App. 389, 135 N.E. 663. In *Morris v. Fox*, Fox had contracted to have a house built, for which he specified a stucco veneer to be placed over a specified sheathing. The sheathing had been installed wrong side out, so that it would not support the stucco. Correcting this defect would have involved stripping all the stucco from the building, removing and reversing the sheathing, and applying new stucco; a project more of reconstruction than repair. The court held that an instruction that the measure of damages was to be the shortfall in the value of the house was correct. The court distinguished the earlier case of *Springer v. Jones*, in which a cost–of–repair instruction was upheld, because the defects involved in *Springer* involved a leaky roof, poor cement flooring, crooked steps, and a crooked mantle which could be repaired easily without reconstructing the house. (1919), 76 Ind.App. 269, 123 N.E. 816; *accord, Valparaiso Hotel Co. v. Schneider* (1935), 100 Ind.App. 341, 195 N.E. 589; *James I. Barnes Construction Company v. Washington Township of Starke County* (1962), 134 Ind.App. 461, 184 N.E.2d 763.

But these authorities all deal with the construction of buildings, and at most only incidentally with earthmoving contracts.[4]

---

2. *See, e. g., Indiana Motorcycle Association v. Hudson* (1980), Ind.App., 399 N.E.2d 775; *City of Evansville v. Rieber* (1979), Ind.App., 385 N.E.2d 217; *Gene B. Glick Company, Inc. v. Marion Construction Corp.* (1975), 165 Ind. App. 72, 331 N.E.2d 26.

3. *Luxurious Swimming Pools, Inc. v. Tepe* (1978), Ind.App., 379 N.E.2d 992, 997 (defective construction of swimming pool); *Smith v. Glesing* (1969), 145 Ind.App. 11, 248 N.E.2d 366, (automobile driven into house: loss in value $4,000; cost of repair $2,500).

4. We have found only one case involving a lease calling for improvements to land, *Irving v. Ort* (1957), 128 Ind.App. 225, 146 N.E.2d 107. The principal issue in *Irving v. Ort* was measure of damages, but the Appellate Court's holding was that when the lessee breaches both alternatives of an alternative covenant, he is liable only for the lesser of the two breaches. 128 Ind.App. at 232, 146 N.E.2d at 110.

It is, however, instructive that when presented with a choice between a judgment for $22,700 based on a theory of damages analogous to "cost–of–repair", and a judgment for $1,942.50

The contract line is of little significance in helping us separate sheep from goats. Is the deficiency in performance to be remedied by reconstruction or repair? In the case of a landfill, reconstruction and repair involve identical processes; the difference being only one of degree.

■ Woven into the warp and woof of the two lines of cases we have been discussing is a common thread, consisting of a policy against the law requiring money to be spent wastefully. Whenever the issue of damages has been squarely presented, whether in tort or in contract, the courts of Indiana have refused to command that damages be assessed on a theory of repair, if repairs would entail costs in excess of the economic benefit such repairs would confer. This policy is at one with the rule outlined in § 346(1)(a) of the Restatement of Contracts (1932), which says:

§ 346. Damages for Breach of a Construction Contract.

(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

(a) For defective or unfinished construction he can get judgment for either

(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.

Completion in accordance with the contract would involve unreasonable economic waste when "the value of the finished product is much less than the cost of producing it after the breach has occurred." Restatement of Contracts § 346, Comment (b).

■ Such is squarely the case here. Salling and Anderson agreed that the Salling land should remain in Anderson's possession until it was put into a certain condition, in which it would be worth $271,800, at which time the land would be returned to Salling. Instead, Salling has been restored to possession of land worth $90,600; and Salling complains, rightly, of being $181,600 less wealthy than it would have been had the contract been fulfilled.

But this court must part company with Salling on the matter of how Salling's unrealized wealth is to be restored to it. Salling would have us decide that a proper award of damages must go beyond placing Salling in the same economic position as though the contract had been performed, but must also place the land itself in the same physical condition as though the contract had been performed. Put another way, rather than have the benefit of some $180,000 in cash, Salling would have the benefit of $180,000 in land value by making the City of Anderson literally bury nearly $600,000 in cash in Salling's land. That would be economic waste.

"The purpose of money damages is to put the injured party in as good a position as that in which full performance would have put him; but this does not mean that he is to be put in the same specific physical position." Restatement of Contracts, § 346, Comment (b) (1932).

Thus, it was not error for the trial court to award Salling damages measured by the shortfall in the fair market value of Salling's land from what that value would have been had the contract been fully performed.

## II.

ISSUE TWO Was the assessment of interest an award for the use of the Salling land, and therefore barred by the statute of limitations?

PARTIES' CONTENTIONS–Anderson notes that the court's award of eight per-

---

based on a theory analogous to "loss–of–value", the court rejected the larger figure, even though the greater award would have served to

put the plaintiffs into the physical position they would have enjoyed had the contract been performed.

cent per annum interest on the $181,200 shortfall in the value of Salling's land was characterized as compensating Salling for the loss of the use of the land. That part of the judgment was therefore within the six year statute of limitations.[5] Anderson argues that the cause of action in this suit accrued no later than the end of 1968; Salling did not file suit until May 9, 1976. From these facts, Anderson concludes that the court was barred from making this award to Salling.

Salling replies that its original complaint was for the cancellation of the lease of its land, and not for the loss of the use of its land. Since the action itself is not barred, the award of interest is not barred.

CONCLUSION—We need not reach the statute of limitations issue, for an award of interest was inappropriate in this case.

The trial court characterized its award of interest as compensation to Salling for the loss of the use of the $181,200 additional value its land would have had, had Anderson not breached the lease. However the award of interest may be characterized, in substance it amounts to pre–judgment interest on the damage which Salling sustained as a result of the breach of the lease.

 It is within the discretion of a trial court to award pre–judgment interest, if that will provide the plaintiff with full compensation. *Portage Indiana School Construction Corporation v. A. V. Stackhouse Company* (1972), 153 Ind.App. 366, 287 N.E.2d 564, 60 A.L.R.3d 478; *Luskus v. United Pacific Insurance Co.* (7th Cir., 1971), 452 F.2d 207. But pre–judgment interest is available only when the principal amount of damages "are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation," at the time those damages accrued. *Rauser v. LTV Electrosystems, Inc.* (7th Cir. 1971), 437 F.2d 800, 805. This requirement that the principal amount of damages should be determinable without resort to trial is not broad enough to embrace the facts of this case.

For instance, it has been held that a principal amount of damages is too indeterminate to sustain an award of interest when the amount of the judgment substantially varies from the amount demanded in the complaint. In the *Portage* case the Court found that:

[T]he wide disparity between the figure contained in the so–called invoice of June 19, 1962 and the demand figure in the Appellee's complaint and the actual figure of the principal sum of the judgment would certainly lead to the conclusion that this is a case where damages could not and were not ascertained until judgment. In *Rauser* it was easy to determine the value of the stock in question simply by reference to standard market quotations on a given day. We certainly do not have that kind of simplicity in this case.

*Portage School Construction Corp. v. A. V. Stackhouse Co.*, 287 N.E.2d at 569. Nor do we have that kind of simplicity here. *See also City of Evansville v. Rieber* (1979), Ind.App., 385 N.E.2d 217.

Further, we note that Salling Concrete presented the testimony of two real estate appraisers, and its own president, on the issue of the potential and actual value of the Salling land; and that each, giving his opinion in 1976 of the value of the land in 1968, came up with different figures.

We feel that the facts of this case do not adequately support an award of pre–judgment interest on Salling's damages. The judgment was excessive by the amount of interest awarded, and must be reduced accordingly.

### III.

*ISSUE THREE*—Did the trial court err in excluding nine of Anderson's exhibits?

*ADDITIONAL FACTS AND PARTIES' CONTENTIONS*—Nine of the exhibits which the City of Anderson offered during trial were objected to by Salling, and excluded from the evidence. They were:

---

**5.** *Ind.Code* 1971, § 34–1–2–1.

*EXHIBIT O*: Regulation SPC–18 of the Indiana Stream Pollution Control Board, which is a regulation effective August 15, 1974, on the issuance of permits for sanitary landfills and refuse processing facilities, and on standards for their operation.

*EXHIBIT P*: Policy No. 75–1 of the Indiana Stream Pollution Control Board, adopted January 21, 1975, relating to sanitary landfills in marginal areas.

Exhibits O and P were not admitted, on the grounds that they were irrelevant. The City of Anderson claims that they are relevant, in that they impose limits on the methods that Salling might lawfully employ in filling its land.

*Exhibits U and V* are both letters which the City of Anderson had discovered only on the morning of the day they were introduced into evidence. The trial court excluded Exhibits U and V on the ground that they had not been exchanged ten days prior to trial in accordance with the pre trial order. At trial, counsel for the City of Anderson objected to exclusion of the exhibits on the ground that it could not be expected to exchange evidence prior to trial which they had only that day discovered. On appeal, Anderson argues that Exhibits U and V were offered as rebuttal exhibits, and therefore were outside the scope of the pre–trial order. If a party presents one ground for an objection at trial, and then abandons that ground for another on appeal, he has waived that objection entirely. *Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20.

*Exhibits X and Y*: Exhibit X was a topographical map of the Salling land prepared in 1976 by an aerial survey company. Exhibit Y was the survey company's certificate as to the methods and equipment used in preparing Exhibit X. These exhibits were rejected, among other reasons, because no representative of the aerial survey company was available to authenticate these exhibits, and to be cross–examined on them. The City of Anderson has conceded that it did not lay any proper foundation for these exhibits. Appellant's reply brief pages 73, 74.

*Exhibit Z*: This is a map of the Salling land, prepared by Harold E. Smith, and introduced by Salling as Exhibit 19, on which Smith had noted the existing and proposed elevations of several points on the Salling land. Exhibit Z differed from Exhibit 19 in that Anderson's witness, Stephen Goddard, a construction engineer, had drawn upon a copy of Exhibit 19 a set of contour lines reflecting his own observation of the contours of the Salling land.

*Exhibits EE and FF* are copies of the Indiana Department of Natural Resources topographic maps encompassing the Salling land. On these maps, employees of the City of Anderson's Planning Department had drawn colored lines depicting the flood plain and flood hazard area of White River, as defined by various local, state, and federal agencies.

Exhibits Z, EE, and FF were all refused by the trial court, on the ground that they were irrelevant, and that they had not been exchanged with Salling ten days prior to trial.

The City of Anderson argues that these exhibits are relevant insofar as they rebut the contours of the land as depicted in Exhibit 19. Further, since these exhibits were offered in rebuttal to Salling's exhibits, Exhibits Z, EE, and FF were not within the scope of the pre trial order.

Salling responds that, rebuttal or no, Exhibits Z, EE, and FF were offered as part of Anderson's case-in-chief, and therefore should have been exchanged with Salling ten days prior to trial, as called for in the order.

■ *CONCLUSION* – Because of our holding that the cost of filling the Salling land is not the proper measure of damages, the exclusion of these exhibits, all of which relate to the methods available for filling the Salling land, and the amount of fill material necessary to do so, was at most harmless error. It was therefore not reversible error to exclude them.

An error in the reception or exclusion of evidence is harmless if the evidence in question relates to an issue that has been re-

moved from the case by the ultimate judgment of the trial court. *Frybarger v. Coffelt* (1979), Ind.App., 387 N.E.2d 104, 105; see *Adkins v. Popard* (1943), 222 Ind. 16, 51 N.E.2d 476. The trial court in the present case had enough evidence before it to determine that the cost of repairing Salling's land would have greatly exceeded any possible benefit of such repair, and therefore properly adopted a measure of damages to which the cost and methods of repair were immaterial.

Therefore, these questions of evidence present us with no reviewable error.

### IV.

*ISSUE FOUR*—Was the judgment of the trial court supported by sufficient evidence?

*PARTIES' CONTENTIONS* –The City of Anderson advances arguments of great prolixity the burden of which is that none of the material findings of fact made by the trial court are supported by sufficient evidence.

Salling Concrete Corporation cites Trial Rule 52(A), which requires that the trial court's findings of fact be sustained unless clearly erroneous. Salling has provided us with a checklist of the material findings of the trial court, presenting concise citations to the record in support of each finding. ■ *CONCLUSION* – The record discloses adequate support in the evidence for the findings and judgment of the court.

Following Trial Rule 52(A), Indiana Rules of Procedure, the trial court based its judgment upon special findings of facts and conclusions of law. Trial Rule 52(A) restricts the scope of our review of such findings of fact by providing that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." We may reverse such a judgment on the grounds of insufficiency of the evidence only "if there is no reasonable evidence to support it ...." 3 W. Harvey, *Indiana Practice*, Rule 52, Civil Code Study

Commission Comments, at 423; *State v. Bress* (1976), Ind.App., 349 N.E.2d 229.

The first material finding of fact that the City of Anderson contests is the court's finding that on July 1, 1968, the Salling land was worth $2,500 per acre, and that it would have been worth $7,500 per acre had the contract been complied with. This finding is identical with the testimony of Kent Poore, a professional appraiser called by Salling.

Next, Anderson contends that the terms of the 1962 lease were materially modified late in October, 1966. In particular, Anderson says that the City and Salling had agreed on a different final grade for the land, which might substantially alter the finished value of the land, and the methods and amount of material necessary to complete filling. Anderson's Exhibit C is a file copy of a letter from Salling's attorney purporting to be a memorandum of such modifications reached at a meeting between Robert D. Wilhite, president of Salling Concrete, and the Anderson Board of Public Works. Paragraph five of that letter said:

5. The existing contract between the City and Salling Concrete Corporation pursuant to which the land fill has been operated since 1962 *will be amended* to provide for the accomplishment of the foregoing items 1 through 5 [sic]. [Emphasis added]

When confronted with the letter, Wilhite denied that the amendment spoken of in paragraph five had ever in fact been consummated. William L. Peck, who was City Attorney at that time, testified that no document amending the 1962 lease was ever executed by the City of Anderson. From this evidence, it was reasonable for the trial court to infer that the City and Salling had only "agreed to agree" to amend the lease, and had never gotten around to actually doing so.

The City of Anderson next attacks the foundation of the award of damages for depriving Salling of its use of the shortfall in the value of the property by attacking the sufficiency of the evidence to support the court's findings that the City of Ander-

son had dominion and control over the Salling land since June 1, 1957, and particularly between 1968 and 1976. We turn to the 1962 lease, paragraph 12 of which provides that Salling would be entitled to enter and possess each part of the property upon such parts' being filled to the contract grade.

Paragraph 3 of the lease provided that the term of the lease should not expire until the land had been filled. Robert Wilhite, the president of Salling Concrete Corporation, testified that Salling never took possession of any part of the land, as no part of the land had ever been filled to the contract level. From this, the trial court could rationally have found that the term of the lease had not expired, and it is elementary that a lessee is entitled to the possession of leased property until the expiration of the term of the lease.

Next, the City of Anderson challenges the finding that it could have completed filling the Salling land by July 1, 1968. In 1964, as City Engineer, Harold E. Smith reported to the city government that the Salling landfill would be filled "[b]y July, 1966." Upon cross–examination by the City of Anderson, Smith admitted that his actual estimate was that the landfill would have been completed in early 1968, and that he cited the earlier date in recognition of the torpor of government processes. Robert Wilhite, who by the time the case came to trial had had considerable exposure to questions of landfill management, testified that he believed that the landfill could have been completed by July of 1968. The trial court's finding was therefore not without foundation.

Anderson has other objections to the sufficiency of the evidence, amounting in sum to a claim that not a single material finding of fact was supported by any evidence. The City contends, for instance, that the evidence does not support the finding that it breached the lease in any respect; in fact, evidence that the lease was breached is abundant. Anderson also contests the findings as to the amount of fill necessary to finish the Salling land, and the cost to do so; again, these findings are supported by probative evidence, admitted without any objection from Anderson.

The findings of the trial court are sufficiently founded upon the evidence before it.

This case is remanded for the sole purpose of decreasing the entry of judgment by the amount of $118,330.02, to the sum of $182,432.74, and is in all other respects affirmed.

SULLIVAN and SHIELDS, JJ., concur.